(43 South. 635.)

No. 16,259.

STATE v. VICKNAIR.

(Dec. 10, 1906. On Rehearing on Motion, March 18, 1907. Rehearing on Merits Denied April 29, 1907.)

1. CRIMINAL LAW—APPEAL—PROCEEDINGS FOR TRANSFER OF CAUSE—TIME.

The provisions of Act No. 108, p. 155, of 1898, requiring "that appeals * * * in criminal cases * * * shall be taken by motion, verbally or in writing, in open court, within three days after sentence," are mandatory, and, as there is no proviso in the act to the effect that, in the event that the trial court should adjourn immediately upon pronouncing sentence and should not open again until after the expiration of such three days, the delay within which the appeal is to be taken shall be extended until it again opens, it follows that, in such case, the defendant must take his appeal upon the day upon which the sentence is pronounced. It is only when the court remains open until, or reopens upon, the third day after the sentence is pronounced, that the defendant can avail himself of the full term "within" which he is required to act if he. desires to appeal.

2. SAME.

The expression "open court," as used in Act No. 108, p. 155, of 1898, means the actual session of the court while the judge is on the bench, as contradistinguished from the "continuous session," of 10 months, provided for by article 117 of the Constitution.

3. SAME.

The word "term," as used in Act No. 30, p. 56, of 1878, § 1, means the session during which the court is actually open, as contradistinguished from the continuous session, of 10 minutes, provided for by article 117 of the Constitution.

On Rehearing.

4. SAME.

Adjournment of court cannot deprive accused of the three days allowed him for appealing.

5. CRIMINAL LAW—CONTINUANCE—GROUNDS—ABSENCE OF WITNESSES.

Accused cannot complain of the refusal of a continuance for summoning witnesses, when he had ample opportunity for procuring the attendance of the witnesses, and has not chosen to avail himself of it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1336.]

6. SAME — NEW TRIAL — PROCEEDINGS — IMPEACHMENT OF VERDICT.

Separation or misconduct of the jury, or that strangers had access to the jury, cannot be proved by the jurors.

A juror cannot be heard to impeach his own verdict.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2394.]

7. SAME—AMENDMENT OF MOTION.

A motion for new trial, defective for being too vague and general in its allegations, should be allowed to be amended by the giving of particulars, where it can be done without delaying the trial more than a few minutes.

8. SAME—APPEAL—HARMLESS ERROR—RULING ON MOTION FOR NEW TRIAL.

But the refusal to allow such amendment will not be good ground for setting aside the verdict on appeal, where the evidence in support of the motion was admitted as if the amendment had been made.

9. COURTS — OFFICERS — STENOGRAPHERS — RIGHT TO COMPENSATION.

A stenographer employed by the accused to take down the evidence and the bills of exception cannot be compelled to furnish a copy of his notes without being paid therefor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 200.]

10. CRIMINAL LAW—CONTINUANCE—GROUNDS—ABSENCE OF WITNESSES.

Defendant is not entitled to have the case remain open until the next day to enable him to summon witnesses whom he has had ample opportunity to summon and has not summoned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1336.]

11. HOMICIDE—INSTRUCTIONS—DEFENSES.

A general charge that the homicide must have been willful is not sufficiently specific, in a case where the defense is that the homicide was per infortuniam; but the refusal of a requested charge is not reversible error, unless the charge is shown to have been applicable to the facts of the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 3164, 3165.]

12. SAME.

It is not true that in a case of homicide the accused cannot be convicted, unless the fatal wound is shown to have been inflicted maliciously. He may be convicted of manslaughter. Such a charge is properly refused.

(Syllabus by the Court.)

Appeal from Twenty-Eighth Judicial District Court, Parish of St. John the Baptist; Prentice Ellis Edrington, Judge.

Renes Vicknair was convicted of manslaughter, and appeals. Affirmed.

Hamilton Numa Gautier, for appellant. Walter Guion, Atty. Gen., and Louis Her-

mann Marrero, Jr., Dist. Atty. (Lewis Guion, of counsel), for the State.

### On Motion to Dismiss Appeal.

MONROE, J. Defendant, who was indicted for murder and convicted of manslaughter, prosecutes this appeal, which the state moves to dismiss, on the ground that it was not taken within three days, as required by law.

It appears from the record that the jury brought in its verdict on June 19th; that defendant moved for a new trial, and the motion was heard and overruled and sentence pronounced on July 7th; that the court then adjourned until July 12th, and did not sit during the interval in the parish of St. John the Baptist; and that, upon its reopening in that parish, on July 12th, the motion for appeal was presented and the appeal allowed.

Act No. 30, p. 56, of 1878 provides:

"Section 1. * * * That, in all criminal cases, in which appeals are allowable under the Constitution, the party desiring to appeal shall file his motion, either verbally or in writing, in open court. This motion for appeal must be filed, in the courts other than those of the First judicial district, during the term at which the sentence shall have been rendered, and, in the courts of the First judicial district, within ten days after the sentence shall have been rendered.

"Sec. 2. * * * That all such appeals shall be suspensive and no bond shall be required from the appellant.

"Sec. 3. * * * That no appeal shall be granted in such cases after the time herein specified shall have expired."

Section 4 relates to the return of the appeal.

"Sec. 5. That all laws and parts of laws inconsistent with this act be and the same are hereby repealed, and that this act shall take effect from and after the first day of March, 1878."

It will be seen that, under this law, the party desiring to appeal was allowed until the last day of the term at which the sentence was pronounced within which to do so, but he was obliged to take the appeal "either verbally or in writing, in open court," and he was, in express terms, denied the right to appeal after the lapse of the time specified in the act. Hence, if the sentence was pro-

nounced on the last day of the term, it was necessary that the appeal should be taken on that day. By the present Constitution, it is provided that:

"Art. 117. District courts shall hold continuous sessions during ten months of the year. In districts composed of more than one parish, the judge shall sit, alternately, in each parish, as the public business may require."

Act No. 163, p. 320, of 1898, being an act to carry these provisions of the Constitution into effect, reads, so far as it needs be quoted:

"Sec. 2. * * * That, in districts composed of more than one parish, the judge shall sit alternately in each parish, provided that no session in any parish of a district shall be fixed for less than one, or more than three, weeks, as the public business may require. * * *

"Sec. 3. * * * That it is the intent and meaning of article 117 of the Constitution that district courts shall always be open and the proceedings held to be in open court while the judge is on the bench, and that the fixing of the sessions in districts composed of more than one parish shall not affect the authority of the duty of the judge to sit at any time in any of the parishes of his district when the public interest may require it."

Construing the provisions of section 2, above quoted, this court has held that the General Assembly did not thereby mean to control the judges in the matter of the time during which they shall actually hold court in the respective parishes of their districts, but, merely, that they shall designate, in advance, certain periods, as "terms of court," with the view of furnishing a basis to public officials for fixing dates, for drawing jurors, or doing other acts, which, under existing laws, have to be done a certain number of days before sessions of the court. Webb v. De Baillon, 51 La. Ann. 789, 25 South. 648. Act No. 108, p. 155, of 1898, is entitled "An act to amend and re-enact Act No. 30 of 1878, relative to appeals in criminal cases," and reads as follows, to wit:

"Sec. 1. * * * That appeals to the Supreme Court, in criminal cases allowable under the Constitution of 1898, shall be taken by motion, either verbally or in writing, in open court, within three days after the sentence shall have been pronounced.

"Sec. 2. * * * That all such appeals shall be made returnable to the Supreme Court within ten days from the date of the order of appeal; that all such appeals shall be required from the appellant; and that all such cases shall be tried and determined by preference.

"Sec. 3. That all laws and parts of laws inconsistent with this act be and the same are, hereby, repealed."

At the time that the act thus quoted was adopted, no definite understanding had been reached as to whether the 10 months' "continuous session," provided for by the Constitution, was to be regarded as. a "term," within the meaning of the law which granted the accused until the last day of the "term" within which to appeal, or whether the term (for that purpose) was to be considered the period of actual, continuous sitting, in a particular parish, and the evident purpose of the General Assembly was to fix the maximum delay for such appeals at three days, in all cases, and to provide against a delay, in any case, during the 10 months' "continuous session," provided for by the Constitution, or, as we apprehend, during the intervals, exceeding three days, between the actual sitting at which the sentence is pronounced and the next actual sitting in the same parish. Any other construction than this would give to the act of 1898 the effect of lengthening, and adding uncertainty to, the time allowed for such appeals; whereas, we are of opinion that the General Assembly was fully alive to the commonly recognized evil resulting from the delay in the administration of criminal justice and enacted the statute in question as a partial remedy therefor. That its provisions are mandatory, there can be no doubt. The language is:

"That appeals * * * in criminal cases * * * shall be taken, by motion, either verbally or in writing, in open court, within three days after sentence shall have been pronounced."

And, in construing it, this court has said:

"The word 'shall' is not used in the statute to give discretion, but to require, peremptorily, that all appeals shall be taken three days after sentence. The statute adopted a positive and absolute rule in which public interest is concerned and which cannot be waived under any of the defined powers given to the prosecution." State v. Moore, 52 La. Ann. 606, 26 South. 1001.

We have it settled, therefore, that the appeal must be taken within three days after sentence, and must be taken in open court, and, apart from the common understanding on the subject, the General Assembly has declared that "open court" means the actual session of the court, "while the judge is on the bench." Act No. 163, p. 320, of 1898, § 3. It will be observed that there is no proviso in the statute to the effect that, in case the court should adjourn immediately upon pronouncing sentence, and should not open again until after the expiration of the three days within which the defendant is required to take his appeal, the delay shall be extended until the court shall again open, from which, it follows that, in such cases, the appeal must be taken upon the day upon which the sentence is pronounced, as was required before the act of 1898 became a law, and it is only when the court remains open until, or reopens upon, the third day after the sentence is pronounced, that the defendant can avail himself of the full term, "within" which he is required to act if he desires to appeal.

In the case of State v. Fairbanks, 115 La. 458, 39 South. 443, the appeal was sustained, though this court found that, whilst it was applied for within three days, the application was made after the adjournment of the court by which the sentence was pronounced. In that case the chief justice was of opinion that the motion should have been made before the adjournment, and we now concur in that view. In the case of State v. Estoup, 39 La. Ann. 906, 3 South. 124, it was held that, where, under the closing paragraph of section 1 of Act No. 30, p. 56, of 1878, which reads:

"The motion to appeal must be filed in the courts other than those of the first judicial district, during the term at which the sentence

shall have been rendered, and, in the courts of the first judicial district, within ten days after the sentence shall have been rendered"

—the court adjourned upon the day upon which the sentence was pronounced, a motion for an appeal, made upon the day upon which the court reopened, was in time, though more than 10 days had elapsed since the sentence. The court, in that case, seems to have fallen into the error of applying the provision relating to appeals from the first judicial district to an appeal from the parish of Orleans; but, apart from that, we are unable to concur in the view there expressed. The decisions upon the questions here at issue in the two cases last above mentioned are therefore overruled.

And, for the reasons thus given, it is ordered, adjudged, and decreed that the appeal in this case be dismissed.

A rehearing on the motion to dismiss was granted on January 7, 1907, and the case then went to trial on the merits.

### On Rehearing.

PROVOSTY, J. Defendant was tried for murder, and convicted of manslaughter, and has appealed.

The state moves to dismiss the appeal, as having been taken too late. The law governing the matter is Act No. 108, p. 155, of 1898, which provides that "appeals in criminal cases shall be taken in open court within three days after sentence." Defendant was sentenced on the 7th, and the court then adjourned over to, and did not again sit until, the 12th, when the appeal was taken. This was in time, since the appeal had to be taken in open court, and was taken the very first day that court sat after sentence pronounced.

The case is identical with that of State v. Estoup, 39 La. Ann. 906, 3 South. 124, except that there the appeal was taken after adjournment for the term, and after several months, instead of, as here, at the same term and within five days.

Any other construction would make it discretionary with the judge whether a defendant should have or not the three days allowed him by the statute, for the adjournment of court is a matter discretionary with the judge. Nay, the three days' delay provided by the statute might prove a snare to the defendant (as, defendant says, happened in this case), for, if he trusted to it, the judge might adjourn the court for three days, and thus cut off the appeal. No prudent practitioner would consent to take such a risk; and, hence, the practical operation of such a construction would be that the defendant would in every case take his appeal on the day of sentence, and the statute allowing a delay would be nullified. Far from a defendant having to take his appeal on the day sentence is pronounced, the well-settled rule is that the day is not even to enter into the computation of the delay for appealing. Allen v. Creditors, 8 La. 223; Mercier v. Judge, 29 La. Ann. 223; Tuprey v. Edmondson, 29 La. Ann. 850; Garland v. Holmes, 12 Rob. (La.) 421; Solari v. Judge, 40 La. Ann. 793, 5 South. 63; State v. Michel, 52 La. Ann. 936, 27 South. 565, 49 L. R. A. 218, 78 Am. St. Rep. 364; Swift v. Tousey, 5 Ind. 196; Noble v. Murphy, 27 Ind. 502; Faure v. U. S. Ex. Co., 23 Ind. 48; Smith v. Gale, 137 U. S. 577, 11 Sup. Ct. 185, 34 L. Ed. 792; Cawlfield v. Brown, 45 Ala. 552; Calvert v. Williams, 34 Md. 672; Lubbock v. Cook, 49 Tex. 96; Bennett v. Kuhn, 67 Wis. 154, 29 N. W. 207, 30 N. W. 112; Carleton v. Byington, 16 Iowa, 588; Smith v. Laborre, 37 Kan. 480, 15 Pac. 577; Chiles v. Smith's Heirs, 52 Ky. 460; Chapman v. Allen, 33 Neb. 129, 49 N. W. 926; Carson v. Love, 16 Tenn. (8 Yerg.) 215; Young v. Whitcomb, 46 Barb. (N. Y.) 615; Browne v. Browne, 3 Serg. & R. (Pa.) 496; In re Ege, 2 Watts (Pa.) 283.

The motion to dismiss is overruled.

Bills of exception Nos. 1 and 2 relate to the refusal of the judge to grant a continuance, because of the absence of character witnesses. The judge states that the trial lasted eight days, and that during that time the defendant could have procured the attendance of these witnesses if he had chosen to do so; but that, on the contrary, during the trial he requested that all character witnesses summoned by him be discharged.

Bill No. 3 contains two exceptions; one to the ruling of the court refusing to permit defendant to prove misconduct of the jury by one of the jurors—which ruling is so manifestly correct that it needs no comment—and the other to the refusal to allow a supplemental motion for new trial to be filed.

In the light of the attending circumstances, the latter exception is equally without merit. The verdict was rendered on the 19th of June. Defendant filed his motion for a new trial on the 2d of July, and it was fixed for trial for the 5th of July. On that day, defendant asked leave to file a supplemental motion, and it was granted him, and he filed a motion assigning separation of the jury, misconduct on their part, and that they had access to and were in contact and company with strangers. At the request of defendant, the case was then reassigned to the next day for trial. On the trial defendant offered one of the jurors as a witness to prove the alleged separation, misconduct, etc., and, very naturally, objection was made, and sustained, that a juror could not be heard to impeach his own verdict. Defendant's counsel then stated in detail, and at great length, what the acts of separation, misconduct, etc., consisted of. The district attorney renewed his objection, and added the further objection that the allegations of the motion for new trial were too vague and general to admit of evidence in support of them.

The court having sustained the objection, the defendant asked for five minutes in which to prepare and file a supplemental motion embodying the detailed statement just made. The court ruled that defendant had had all the time he could possibly have needed to prepare his motions for new trial, and would not grant the delay. Counsel for defendant then offered to make part of his motion for new trial the statement just made by him, and which the clerk had taken down, and the court declined to allow him to do so.

We think the court should have granted the motion, and allowed the allegations of the motion for new trial to be supplemented by the giving of particulars. It would not have delayed the trial. But we find that the objection to the vagueness of the allegations was not thereafter renewed, and that the defendant was permitted to offer all the testimony he had touching the alleged separation, misconduct, etc., so that defendant would have been in no better position had he been permitted to amend his pleadings. Under these circumstances, the erroneous ruling did no harm, and therefore is not reversible error.

Bill No. 4 is to the refusal of the judge to compel the stenographer to transcribe and furnish a copy of his notes, containing, besides the evidence, the several bills of exception reserved by defendant in the course of the trial.

The per curiam of the court on this point reads as follows:

"The court refuses to order the stenographer, Mr. C. H. Lander, to produce his notes, for the reason that the law makes no provision for the taking of testimony by a shorthand writer in criminal cases, in the country parishes; that the stenographer was not the official stenographer of the court, in this case, and was the specially employed private stenographer of the accused.

"Before the beginning of the trial, the court was informed by the district attorney that the gentleman who presented himself to take the testimony was the private stenographer of the accused, and that he had nothing to do with his employment and would not consider him as an official stenographer, and objected to his being sworn, and taking the testimony as such; but that, if the testimony was taken by the

stenographer, and the bills dictated to him, he would be willing to relieve counsel for the accused of the trouble of writing his bills of exceptions during the trial as required by law, provided the notes transcribed be presented by counsel for the accused, and that they be correct. Counsel for the accused stated to the court that the stenographer was the private stenographer of the accused, and that he could not produce the testimony, because his client could not pay the stenographer, who took the testimony in shorthand during eight days, working on an average of 11 hours a day. The stenographer being an employé of the accused, and not an officer of the court, the court considered itself powerless to order him to transcribe and produce his notes.

"The court has been informed by Mr. Lander and by counsel for the accused that the notes would be produced as soon as they would be paid for, or if counsel for the accused expressed a willingness to pay for them. Even if the court had the power, it certainly would be an injustice to force Mr. Lander, the stenographer, to work for nothing."

Inasmuch as the stenographer was the private stenographer of the accused, working under a private agreement with him, we do not see how the judge could have ruled differently.

Bill No. 5 is to the refusal of the judge to leave the case open until the next day, so as to permit defendant to summon other witnesses. Defendant had had every opportunity for summoning witnesses, and was not entitled to any further time. There was no question of surprise or of newly discovered evidence. The sole excuse was that the persons whom defendant desired to summon had been present during the day, and that defendant thought they would remain.

Bill No. 6 is not noticed in defendant's brief, and therefore nothing more need be said of it than that we have examined the rulings complained of and found them correct. The court will take occasion to say that it cannot countenance the practice attempted here of simply annexing the clerk's note of evidence to the bill as an exhibit, and referring to it in general terms for the objections, rulings, and reservations of bills, instead of setting forth the objections and the rulings in the bill itself. If an objection

and the ruling thereon is not deserving of a statement in the bill, it is not deserving of any attention on the part of the court.

Bill No. 7 is to the overruling of the motion for new trial. The original motion was based on the grounds: (1) Verdict contrary to law and evidence; (2) error in the rulings of the court in the course of the trial; (3) error in refusing special charges. The supplemental motion was based on the alleged separation, misconduct, etc., of the jury.

The first of these grounds is not reviewable by this court. The rulings alluded to in the second ground are not further specified than by being said to be recited in the bills of exception said to have been reserved thereto and said to be annexed as part of the motion, but, in point of fact, not annexed to the motion, or otherwise appearing in the transcript. They were, doubtless, contained in the stenographer's notes which were never copied. The third ground will be considered in connection with bill No. 8. So far as the supplemental motion is concerned, the allegations of separation, misconduct, etc., were simply not proved.

Bill No. 8 is to the refusal to give certain special charges. This bill is not noticed in defendant's brief, and therefore might be passed over in silence; but we will say that we have carefully considered it, and found that it has no merit. Of the 13 special charges requested, all were covered in the judge's charge, except Nos. 7, 8, 9, and 12. Charges 7, 8, and 12 relate to homicide per infortuniam. If they were applicable to the facts of the case, the judge should have given them, because the mere general charge that, for a conviction, the homicide must be found to have been willful, is not sufficiently specific; but nothing shows that they were applicable to the facts of the case. Hence nothing shows that the refusal to give them caused any injury to defendant. Charge 9 is to the effect that in a case of homicide the defend-

ant cannot be convicted, unless the fatal wound is shown to have been inflicted maliciously. In such a case a defendant may be convicted of manslaughter without such proof. Hence this special charge was properly refused, as not being good law.

Judgment affirmed.