# Everage v. The State.

## Forgery.

(Decided May 18, 1916.   Rehearing denied May 30, 1916.
71 South. 983.)

1. **Criminal Law; Venue; Evidence.**—Evidence that defendant lived in the county at the time of the execution of the injunction bond, for the alleged forgery of which he was being prosecuted, and that all the transactions in connection therewith were had in that county, was sufficient to show venue of the prosecution.

2. **Evidence; Judicial Notice; Filing Injunctive Bond.**—The courts judicially know where an injunction bond, approved by a special register, was filed.

3. **Forgery; Indictment.**—It is not necessary to set out in what particular act the forgery consisted, since the word "forge" includes the false making of an instrument in whole or in part, and of itself is a statement of the particular acts which constitute the particular offense.   .

4. **Criminal Law; Jeopardy; Double; Splitting Crime.**—A single crime cannot be split up or subdivided into two or more indictable offenses, and if the state elects to prosecute the crime in one of its phases, it cannot afterwards prosecute for the same criminal act, under color of another name.

5. **Forgery; Elements.**—Under the common law forgery is the false making or material alteration of any writing, with intent to defraud, which writing, if genuine, might apparently be of legal efficacy for the foundation of a legal liability.

6. **Same; Injunction Bond.**—An injunction bond filed in a suit to enjoin the enforcement of an execution in the sheriff's hands imports on its face the creation of a pecuniary legal liability, and was possessed of apparent legal efficacy, and had capacity for the perpetration of a fraud, and hence, was the subject of forgery.

7. **Same; Injury.**—The capacity of the false and fraudulent writing to work injury is the material question and the fact that injury did or did not result from the forgery, is immaterial.

8. **Same; Evidence; Comparison; Handwriting.**—Under Acts 1915, p. 134, in a prosecution for forgery, the court properly permitted a comparison of the writing in a letter introduced in evidence, and the signature to the instrument alleged to have been forged.

9. **Evidence; Handwriting.**—A witness who stated that he knew the defendant's handwriting was properly permitted to state that in his judgment the signature to the bond was in the handwriting of defendant; the weight and sufficiency of the evidence being for the jury.   .

APPEAL from Covington Circuit Court.
Heard before Hon. H. A. PEARCE.

[Everage v. The State.]

Cleve Everage was convicted of forgery, and he appeals. Affirmed.

The indictment charges that Cleve Everage, with intent to injure or defraud, did falsely make, alter, or forge an instrument in writing in words and figures as follows: Here follows the regular injunction bond, executed by Everage to W. A. Campbell and others, to enjoin the enforcement and collection of three executions against the said Everage, then in the hands of the sheriff, issued by the Court of Appeals in favor of W. A. Campbell, and against the said Everage. The bond is signed C. C. Everage, J. W. Everage, and J. H. Fletcher. The bond was approved July 22, 1913, by J. L. Murphy, special register. The allegation is that he forged the name of J. H. Fletcher to the bond. J. L. Murphy testified that he was special register in the case of C. C. Everage against W. A. Campbell, and that the bond was presented to him by Everage, just as it appears, then, and at the time of the trial, and that he approved it as special registrar. The witness Campbell being introduced, it was asked if he was familiar with the handwriting of Everage, and he answered, "Partially." He was later asked if he knew the handwriting of said Everage, and replied, "Well, I think I do." He was further asked, "Well, in your judgment, do you know it?" and answered, "Yes sir." The witness was then permitted to state that, in his judgment, the signatures to the bond were in the handwriting of C. C. Everage. The same thing is true of the testimony of Rory Campbell, and also the testimony of Jim Head.

PARKS & PRESTWOOD, for appellant. W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

PELHAM, P. J.—Defendant was indicted for having forged an injunction bond approved by a special register.

The defendant requested the general charge upon the grounds that the crime had not been proven; that there was a variance, in that the indictment charged a forgery of the entire instrument while the evidence showed, if anything, nothing beyond the forgery of a signature to the bond; that the bond was not of legal efficacy.

(1, 2) The venue was sufficiently shown. "It is not necessary to prove in express terms that the offense was committed in the

county where the indictment was found. Evidence from which the jury could so infer is sufficient."—*Tinney v. State,* 111 Ala. 74, 20 South. 597; *Dupree v. State,* 148 Ala. 624, 42 South. 1004. The court judicially knows where the bond was filed; the defendant lived in the county at the time of the execution of the bond; the defendant's father was there at the time. All the transactions in connection with the bond were shown to have been had in Covington county. See *Powell v. State,* 5 Ala. App. 75, 59 South. 530.

(3) There is no material variance between the allegata and probata. The word "forge" includes the false making of an instrument in whole or in part. It is not necessary to set out in what particular act the forgery consists, because the word "forge" includes, in and of itself, a statement of the particular acts which constitute this particular offense.—*State v. Greenwood,* 76 Minn. 211, 78 N. W. 1042, 1117, 77 Am. St. Rep. 632, 635.

(4) Appellant inquires: "Now could the defendant be put in jeopardy again under this instrument on an allegation that he forged the other two signatures, or either of them, to said bond?"

We answer he cannot, as the Supreme Court has said: "A single crime cannot be split up, or subdivided into two or more indictable offenses. * * * If the state elects * * * to prosecute a crime in one of its phases, or aspects, it cannot afterwards prosecute the same criminal act under color of another name. * * * 'The state cannot split up one crime and prosecute it in parts."—*Moore v. State,* 71 Ala. 307; *Brown v. State,* 105 Ala. 117, 16 South. 929; *Willis v. State,* 134 Ala. 450, 33 South. 226.

(5, 6) The next question for consideration is: Was the instrument the subject of forgery? "In the opinion rendered in *Dixon v. State,* 81 Ala. 61, 1 South. 69, the court quoted with approval the following statement of Mr. Bishop: 'Forgery at the common law is the false making, or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.' Any false instrument which is legally capable of effecting a fraud may be the subject of a charge of forgery.—*Murphy v. State,* 118 Ala. 137, 23 South. 719; *Burden v. State,* 120 Ala. 388, 25 South. 190, 14 Am. St. Rep. 37." *Dudley v. State,* 10 Ala. App. 130, 135, 64 South. 534, 535.

[Everage v. The State.]

In *Rembert v. State*, 53 Ala. 469, 25 Am. Rep. 639, the Supreme Court said: "Certain writings—a promissory note, or bill of exchange, for illustration—import on their face the creation of a pecuniary liability. So of many other written instruments, if they import legal validity. That is, if the writing shows on its face, without reference to extrinsic facts, that, if genuine, it creates, discharges, increases, or diminishes a money liability, or transfers or incumbers property, or surrenders or impairs an existing valid claim to, or lien on, property, then the false making of such written instrument, with intent to defraud, is, without more, forgery, and will justify a conviction of that grave offense. To fall within the rule, however, which dispenses with the averment of extrinsic facts, the writing itself must show that, if genuine, it affects some existing property right, or legal liability; for otherwise it fails to show its false making or utterance could defraud any one. There must be both the intention and power to defraud, or the legal offense is not committed. This principle rests on the soundest reason, and the highest authority."—*Williams v. State*, 90 Ala. 649, 650, 8 South. 825.

(7) This bond, like a promissory note or bill of exchange, for illustration, imports on its face the creation of a pecuniary obligation. It possesses apparent legal efficacy and has capacity for the perpetration of a fraud. That injury did or did not result from its execution is immaterial.—*Hobbs v. State*, 75 Ala. 1.

"Falsely making any writing, with a fraudulent intent, whereby another may be prejudiced, is forgery. It is not necessary that any prejudice should in fact have happened by reason of the fraud. The capacity of the false and fraudulent writing to work injury is the material question. If the writing has that capacity, the offense is committed."—*Jones v. State*, 50 Ala. 161.

Having reached the conclusion that the instrument is the subject of forgery, it becomes unnecessary to pass upon the power of a special registrar to approve the bond.

(8) The court committed no error in permitting a comparison of the writing in the letter introduced in evidence and the signature to the instrument alleged to have been forged.—General Acts 1915, p. 134.

(9) The objections addressed to the introduction of the testimony of the witnesses Campbell and Head were not well founded. Their testimony was properly admitted. The weight and suffi-

ciency of the evidence was a question for the jury. The rule as to the admissibility of such evidence is declared in *Karr v. State,* 106 Ala. 1, 17 South. 328, as follows: "When it became necessary to prove handwriting, any person having a previous knowledge of the writing of the supposed writer may express an opinion that the writing in question was or was not written or signed by him. The frequency or infrequency of the opportunities of the witness to acquire knowledge rendering him capable of expressing an opinion, or the nearness or remoteness of such opportunities, in point of time to the time of his examination, are matters addressed to the credibility or weight, and not to the admissibility of the evidence, and are for the consideration of the jury. The testimony of the witness Glidewell shows that on two or three occasions, considerable lapse of time intervening, he had seen the defendant write the names of persons and places casually, and that there was in his handwriting a peculiarity attracting his attention, and the last of these occasions was several years before the trial. The testimony is not the highest and most satisfactory kind, but it was competent, and authorized the introduction of the writing in evidence, so far as its admissibility depended on proof of handwriting."

We find no reversible error in the record.

Affirmed.