64 So.2d 90

**HUDDLESTON v. STATE.**

**5 Div. 331.**

Court of Appeals of Alabama.

Aug. 12, 1952.

Rehearing Granted Jan. 6, 1953.

Rehearing Denied Feb. 17, 1953.

58

G. C. Walker, Clanton, and Holley, Milner & Holley, Wetumpka, for appellant.

Si Garrett, Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

PRICE, Judge.

This is an appeal from a conviction upon an indictment, which charges appellant with the forgery and uttering of the endorsement of Dalton Connell to a county warrant.

Count one of the indictment, omitting the formal parts, charged that appellant, "with intent to injure or defraud, did falsely

make, alter, forge or counterfeit the endorsement of Dalton Connell to an instrument in writing, in words and figures substantially as follows:

"First National Bank of Clanton
Clanton, Alabama

Pay this warrant, when properly endorsed, from the fund of Chilton County, Alabama, designated below.
W. M. Polk

Treasurer, Chilton County, Alabama. By ——————Asst.
Atty. in Fact.

Gasoline Fund

Pay
To          Dalton Connell
Or
Order

State of Alabama          No. 3315
County Commission of Chilton County

Clanton, Ala.,     July 12,   1948
$ 293.57

To the Treasurer,
Chilton County, Alabama

The sum of Two hundred ninety-three & 57/100 .....'..............Dollars

for
PO No. 1355–1354 ·

out of any moneys, not otherwise appropriated in Gasoline Fund of said County
W. L. Parrish

President, County Commission of Chilton Co., Alabama.

with the following endorsement on the back thereof: Dalton Connell."

Count two of the indictment carries the same charge as the first, with the alternative averment that appellant "with intent to injure or defraud did utter and publish as true the falsely made, altered, forged or counterfeited endorsement of Dalton Connell, the payee of the above set out instrument in writing, knowing the same to be so falsely made, altered, forged or counterfeited."

■ The appellant's motion to quash the indictment based upon the erroneous minute entry of the Clerk of the court, and because less than fifty persons were summoned as veniremen, was overruled by the court. These questions were decided adversely to appellant's contention in the case of Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350.

■ Defendant's contention that the warrant was not drawn or signed in the manner prescribed by law was also decided adversely to appellant in the case of Wyatt v. State, supra.

■ The indictment follows the form laid down for forgery in the second degree insofar as that form covers forgery of an endorsement. Title 15, Section 259, form 64.

■ There is no form set out for the latter part of Section 200, Title 14, for uttering and publishing as true an endorsement as set out in the indictment, and in drawing this latter part the Solicitor substantially followed the language of the statute, and in this there was no error. Harris v. State, 32 Ala.App. 519, 27 So.2d 794; Sec. 230, Title 15, Code 1940, et seq.

The evidence for the State tended to show that two claims, dated July 1, 1948, were filed with Mrs. Delene B. Wyatt, Clerk of the Court of County Commissioners of Chilton County for payment of a total of $293.57 for lumber. These claims, introduced in evidence as defendant's Exhibit No. 2-0, were filed in the name of Dalton Connell. A purported affidavit bearing the name Dalton Connell, attesting the correctness of the claim, and sworn to before Mrs. Wyatt, supported the claim. These claims were regularly presented to the Court of County Commissioners of Chilton County and allowed by that body, and a warrant drawn on Chilton County, bearing the number 3315, and payable to Dalton Connell. This warrant was purportedly endorsed by Dalton Connell. It

also bears the endorsement of W. E. Huddleston.

Dalton Connell testified that he had never sold any lumber to Chilton County; that he never authorized anybody to file a claim in his name with the county; that he did not sign his name on the back of the warrant, nor did he authorize anyone to endorse it for him. On cross examination he testified he had worked for D. C. Littlefield during 1948 and that Littlefield was selling lumber to Chilton County.

The evidence for defendant was to the effect that W. E. Huddleston was the agent for the Texas Company. D. C. Littlefield sold lumber to Chilton County and since his means were limited he would first go to Mrs. Wyatt, Clerk of the Commissioner's Court, also a Notary Public, and present his claim and sign it before her. Thereupon he would sell the claim to this defendant, and the defendant would issue his personal check in payment therefor, after deducting a discount which usually amounted to 6 or 8 per cent of the amount of the check on a 30 day basis, also deducting any amount due defendant for gasoline and lubricants. The evidence tended to show these parties had operated in this way for several years. The defendant would then take the claim to Mrs. Wyatt and would sign a printed form of claim against the county in blank. Mrs. Wyatt would later fill out the items above the defendant's signature. In due course a warrant, in the form used, would be mailed to the defendant, who would cash it.

Defendant contended Littlefield brought to him a claim against the county, already sworn to by Dalton Connell before Mrs. Wyatt, and that he paid Littlefield for the claim, just as he had for the others; that he took this claim to Mrs. Wyatt, signing his name to another claim in blank, delivering to her the invoice for lumber, and that in due course the warrant came to him in the mail and that he endorsed Connell's name on the back of said warrant, together with his own name and got the money. He did not know Dalton Connell and had never seen him.

Defendant testified on cross examination that he had bought claims from no one but Littlefield. That he had taken five, six or seven claims from Littlefield made payable to Dalton Connell. He further testified that several times the warrant was marked for tires and tubes, although he had been out of the tire business since 1946, and had sold no tires or tubes to the county. When this first occurred he called Mrs. Wyatt's attention to the fact that he had sold no tires to the county and she stated to him the County Commissioners said they were buying too much lumber and it would be all right to change some of the warrants so as to read for tires.

Defendant introduced many witnesses who testified to his previous good character.

C. R. Keener, State examiner of public accounts, stated that in his examination of the records of the Commissioner's Court he would match the warrants against the claims; that he took warrant number 3315 and matched it against the two claims. He was then asked the question, "With reference to those two things that you found did you see anything wrong on the face of it?" On objection by the defendant the court stated: "He may state what he observed." The Solicitor then asked, "What did you observe? Was that regular or irregular up to there?" On further objection by defendant, the court stated: "He may state what he observed and what he saw and his method and the way he went about it." The witness then stated, "We observed it very close and there was no evidence of any delivery—" Defendant objected and moved to exclude this statement. The court overruled the objection and defendant reserved an exception. Thereupon the witness stated further "There was no evidence attached to the claim that anything had been delivered."

The defendant's motion to exclude this statement, on the ground it was not the best evidence and was a conclusion of the witness, was overruled by the court and defendant reserved an exception.

Defendant insists that since defendant's main contention was that there was no intent on his part to defraud, the statements were conclusions of the witness on the vital point as to whether or not any lumber was received by the county, and that the court committed reversible error in overruling the motion to exclude.

The defendant's motion was properly overruled. This was not a conclusion, but the statement of a fact based on the witness' examination of the records of the Commissioner's Court.

At the conclusion of the testimony defendant requested the general affirmative charge as to both counts of the indictment, predicated on the grounds of a variance between the indictment and the proof:

(1) That the indictment alleged only the endorsement of Dalton Connell, whereas the proof shows that the instrument bears the endorsement of both Dalton Connell and W. E. Huddleston.

(2) That the indictment alleges the instrument bore the signature of W. M. Polk at the time the alleged endorsement was made, whereas the proof shows that it is uncertain whether the signature of W. M. Polk was placed on the instrument before or after the endorsement of Connell was placed on the instrument.

(3) That the indictment alleges that the name Dalton Connell was endorsed on the back of the alleged instrument, whereas, the proof shows the name actually endorsed was Dalton Cornell.

(4) It is not shown by the evidence that the alleged offense was committed in Chilton County, Alabama.

■ As to the first ground, the subsequent endorsement of his own name on the warrant had no bearing on the charge against defendant and such variance is immaterial. Brown v. State, 30 Ala.App. 339, 7 So.2d 24; 37 C.J.S., Forgery, § 68.

■ (2) Defendant endorsed the warrant without qualification, thereby warranting the instrument to be genuine in all

respects that it purports to be and is not now in position to question the validity of the warrant. Wyatt v. State, Ala.App., 57 So.2d 366.

■ (3) On cross examination of C. D. Brooks, of the State Department of Toxicology, who qualified as a handwriting expert, after testifying the endorsement of the name of Dalton Connell on warrant No. 3315 was in the handwriting of the same person who had written certain standards, which were admittedly written by defendant, read the endorsement as Cornell. An enlarged photograph of the endorsement was introduced in evidence as State's exhibit 3.

On redirect examination the witness stated:

"It is my opinion that it might have been intended for two N's with an unconscious elimination of one of the strokes of his N which is not uncommon when a series of the same number of strokes are going up and down the line. Where a series occurred where several are involved the count may be lost by the writer and is eliminated or it might as sometimes happens, an extra stroke would be put in and there is not anything in this particular handwriting which definitely differentiates between the construction of the R and the construction of— possibly, the N."

37 C.J.S., Forgery § 68(b) states:

"A variance in names so trifling that it is inconceivable that defendant could have been misled or prejudiced thereby is immaterial."

The rule adopted in this State is if the variance in the name be so slight as scarcely to be perceptible such variance is immaterial. Aaron v. State, 37 Ala. 106; McCoy v. State, 232 Ala. 104, 166 So. 769; Jones v. State, 241 Ala. 337, 2 So.2d 422.

The defendant admitted the name he endorsed on the back of the warrant was that of Dalton Connell. He could not have been misled as to the name alleged to have

been forged. It is our conclusion that if it be conceded there was a variance it was so slight as to be immaterial and could in no way be prejudicial to defendant.

The question of a variance between the name set out in the indictment and that shown by the proof is first presented by the request for the general affirmative charge. The holding of this court in the case of Espey v. State, 31 Ala.App. 351, 17 So.2d 430, 431, is here applicable:

"Moreover, under the rule of idem sonans, declared in Underwood v. State, 72 Ala. 220, 222, the trial court must be sustained in the ruling. Whether one name is idem sonans with another, notwithstanding a difference in the spelling of the two, is a question of fact for the determination of the jury, when it arises on the evidence under the plea of the general issue, and not a matter of law for the decision of the court. Therefore, 'the motion to exclude the evidence, and the instruction requested, were but efforts to withdraw the inquiry from the consideration of the jury, and were properly overruled.' Underwood v. State, 72 Ala. at page 222."

(4) All the evidence was to the effect that all transactions in connection with the alleged forgery were had in Clanton, County seat of Chilton County. This was sufficient to show venue of the prosecution. Everage v. State, 14 Ala.App. 106, 71 So. 983.

Clearly the ruling of the court in refusing the affirmative charge requested was free from error.

One of the grounds of motion for a new trial was that during the progress of the trial the jury was allowed to separate.

In support of the motion defendant introduced an affidavit, dated July 26, 1950, by M. W. DeVaughn, who served as bailiff for the jury, to the effect that during the trial, the jury was lodged two nights at the Exchange Hotel. They occupied six rooms, two men to each room, and the bailiff slept in the room with two of the jurors. Affiant stated that on one of said nights he came out of the bathroom and discovered Mrs. Venable, the wife of a juror, talking with her husband. He further deposed that one morning around 5:00 A. M. a juror, Henry Patterson, came to his room and called affiant to get up. At this time Patterson was dressed. Affiant told Patterson to go back to bed. When affiant arose an hour later Patterson was talking to a man in the upstairs lobby. This man was not a juror and affiant did not hear the conversation.

Counter affidavits by Mr. and Mrs. Venable were to the effect that Mrs. Venable came to the hotel with her 15 months old baby and in the presence of the bailiff and other members of the jury, gave her husband a package containing a change of clothing and shaving kit, that no mention of the case was made either by Mrs. Venable nor any of the jurors.

The State also introduced an affidavit by DeVaughn, dated July 31, 1950, tending to show that the instructions of the court as to keeping the jury together were faithfully carried out and that no one approached or attempted to approach the jury except Mrs. Venable and she only stayed a few minutes and no mention of the case was made by anyone.

By affidavit dated August 2, 1950, DeVaughn repudiated the statement in the July 26th affidavit, that he saw the juror Patterson talking to someone at 5:00 A. M.

The rule adopted in this State is that when the fact of the separation of the jury pending trial for felony cases is established, the onus is on the State to show affirmatively that no injury resulted from the separation. Arnett v. State, 225 Ala. 8, 141 So. 699; Payne v. State, 226 Ala. 69, 145 So. 650; Mitchell v. State, 244 Ala. 503, 14 So.2d 132; Lynn v. State, 250 Ala. 384, 34 So.2d 602.

We are of the opinion that the law requiring the jury to be kept together was complied with and that no improper separa-

tion of the jury has been established in this case.

Furthermore, the State has affirmatively shown that the jurors did not speak to or communicate with anyone on any subject affecting the prisoner's guilt, and that no influences were exerted from any source which may have biased their deliberations during the night spent at the hotel. Davis v. State, 240 Ala. 365, 199 So. 547; Arnett v. State, supra; Redus v. State, 243 Ala. 320, 9 So.2d 914.

We conclude the trial court was authorized in finding no prejudice had resulted to defendant requiring a new trial.

In support of the motion for a new trial the defendant sought to introduce the following affidavit:

"Before me, the undersigned authority in and for said County in said State, personally appeared John Bostrom, who is known to me and who being first duly sworn deposes as follows:

"I was a juror on the case of State of Alabama versus William E. Huddleston, in the Circuit Court of Chilton County, Number 8167, which case began on Wednesday, March 29, 1950, and ended on the night of Friday, March 31, 1950.

"B. L. Venable was also a juror on the said case of the State versus William E. Huddleston. On Thursday night, March 30, 1950, the wife of the said B. L. Venable came in the Exchange Hotel in Clanton where we were staying for the night; at that time court had adjourned until the following morning. Mrs. Venable came into the hotel room where her husband was, and talked to him for several minutes. I did not hear what they said. At the time Mrs. Venable talked to her husband, some of the jurors on the said case were in the hotel room with Mr. and Mrs. Venable, but some of the jurors on said case were somewhere else and I do not know where such other jurors were at that time. At the time Mrs. Venable talked to her husband as aforesaid the jurors on the said case were separated.

"On the nights of March 29, and March 30, 1950, the jury on said case stayed at the said Exchange Hotel in Clanton. We did not all stay together but we had six rooms, and there were two jurors to each room. Lewis Chandler was also on the jury, and the said Lewis Chandler and I stayed in the room with M. W. Devaughn, the bailiff in charge of the jury. On the nights of March 29, and March 30, some of the jurors played dominoes and checkers in the lobby on the second floor. The rooms occupied by said jurors were located on the second floor, but the lobby was about 100 feet from the rooms occupied by the jurors, and was to the left of the hallway which leads from such rooms, so that the said lobby could not be seen from the door to any of the rooms occupied by the jurors. This lobby is located at the top of the stairs which connects with the main floor of the hotel. At the bottom of the stairs and in the main lobby of the hotel there is a public telephone. The said stairs were used by other occupants of the hotel and by persons having business in the hotel. This hotel is a large one and various persons who were not on the jury came and went through the said lobby on the second from time to time while it was being used by various members of the jury for playing dominoes and checkers as aforesaid. Numerous other persons, besides the said jurors, occupied other rooms on the second floor and on the other floors of said hotel.

"Some of the jurors would play dominoes and checkers in the lobby until late at night, after other members of the jury had gone to bed. We were free to come and go at any time, and to retire at any time. There were no toilet facilities available in any of the rooms occupied by the jurors, but there was one bathroom on the second floor of the hotel which was used by the occupants on the second floor.

This room was located on the other side of the lobby from the rooms occupied by the jurors, and in order to get to such rooms it was necessary for members of the jury to walk up the hallway and through the said lobby. When we used the said bathroom other guests of the hotel were constantly in and out of said bathroom at all hours."

■ The affidavit of a juror may be allowed to disclose facts to sustain the verdict. Harris v. State, 241 Ala. 240, 2 So.2d 431. But jurors may not give evidence to impeach the verdict. Alabama Digest, Criminal Law ⬤957(1); Cavin v. State, 25 Ala.App. 43, 140 So. 626; Weatherspoon v. State, 34 Ala.App. 450, 40 So.2d 910; Brackin v. State, 31 Ala.App. 228, 14 So.2d 383.

Defendant earnestly insists that the affidavit of Bostrom merely refers to extraneous matters and cites the case of Alabama Fuel & Iron Co. v. Rice, 187 Ala. 458, 65 So. 402, as authority for his contention that the juror was a competent witness.

The extraneous facts referred to in the case relied on were coercive statements made to the jury by the bailiff in charge and the jurors were held to be competent witnesses to such communication to them.

■ Our courts have held that misconduct of others affecting the jurors may be shown by the jurors themselves. Taylor v. State, 18 Ala.App. 466, 93 So. 78; Arant v. State, 232 Ala. 275, 167 So. 540.

■ In the present case the court properly admonished the jury not to separate and not to converse with anyone concerning the case. If the jury disregarded the instructions of the court such fact would not be an extraneous matter but would be misconduct on the part of the jury itself, and affiant, being a member of the jury, was incompetent to prove such misconduct.

The following authorities hold that a juror is not a competent witness to prove separation or misconduct on the part of the jury, or that strangers had access to the jury. 23 C.J.S., Criminal Law, § 1494; State v. Vicknair, 118 La. 963, 43 So. 635.

The court's action in sustaining objection to the introduction of the affidavit was free from error.

■ The appellant also asserts error in the overruling of the motion for a new trial because of alleged prejudice against the defendant on the part of a venireman, Higgins, and a juror, Hiram Littlejohn.

He complains that the venireman Higgins was biased and by failing to answer questions by the court on his voir dire examination concealed his prejudice.

The record discloses the veniremen were properly qualified by the court before the jury was impaneled, and that no objections were interposed to such voir dire examination. The defendant's counsel did not question the veniremen further, except as to their relationship to the Solicitor or Connell, and as to whether they were witnesses before the grand jury.

On the hearing of the motion appellant introduced affidavits tending to show that Higgins "attended a meeting of various citizens of Chilton County, Alabama."

"The purpose of the meeting was to formulate methods of procedure in arriving at the facts concerning the audit which had been made, or was in the process of being made, of the Commissioners Court of Chilton County, and to ascertain if there had been criminal violations of county officials and other parties concerning county funds of Chilton County." The affidavits state that there were so few people attending the meeting, it was adjourned, and no further meeting was held.

The State introduced an affidavit by Higgins to the effect that he attended such meeting but that he did so as a citizen and taxpayer and for the purpose of deciding what course of action would be best to take for the interest of Chilton County if the audit disclosed misappropriation of funds.

Very few people attended the meeting and no mention was made of the defendant

or any other party subsequently indicted and nothing was said to cause affiant to have a fixed opinion.

He stated further that at the time he served as a venireman he had no fixed opinion as to the guilt or innocence of defendant. His mind was free and open and had he been selected as a juror his decision would have been based on the evidence and the instructions of the court.

■■■ As to the juror Littlejohn, E. R. Dennis was questioned as to an affidavit which he had declined to sign. The unsigned statement reads:

"Before me, the undersigned authority in and for said County in said State, personally appeared E. R. Dennis, who is known to me and who being first duly sworn, deposes as follows:

"My name is E. R. Dennis. I am 33 years of age and reside at Clanton, Alabama. I am a Minister of the Gospel and also write insurance. I know Hiram J. Littlejohn. I was at his store in Clanton, Alabama on Friday Morning, March 24, 1950, at about 10:00 o'clock, A.M. When I went into the store, Mr. Littlejohn was talking to a traveling salesman whose name I do not know. Littlejohn said he had a summons to Court as a Juror, and he showed the summons to the salesman and asked him if he would cash his check after he got paid for serving on the Jury. Littlejohn then said: 'They had just as well pack their clothes and get started on to the Penitentiary.' I spoke up and said that he had better watch out, that if it was him being tried he would want the Jury to weigh the evidence and give justice. Littlejohn then said: 'That's what they would be getting.' I then left, and Littlejohn was still talking to the salesman."

The witness stated after discussing the matter with several people he decided not to sign the statement because he didn't know exactly what was said in the conversation between Littlejohn and the sales-

man. Affidavits by defense attorneys as to statements made by Dennis were introduced and the Circuit Clerk testified Dennis had told him the statements in the affidavit were true.

The State introduced a counter affidavit by Littlejohn denying the statements and asserting that at the time he qualified as a juror he did not have a fixed opinion as to defendant's guilt or innocence and had no prejudice for or bias against him and only reached the verdict of guilty after hearing all the evidence and the court's instruction as to the law.

The statute expressly provides that whether a juror has a fixed opinion as to the guilt or innocence which would bias his verdict may be proved by the oath of the juror alone. Title 30, Section 56, Code 1940; Jones v. State, 120 Ala. 303, 25 So. 204.

■■■ As stated by Judge Harwood in the case of Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350, 362:

"The true test is the state of the juror's mind or feeling at the time he is selected and qualified on the venire. Even though he may previously have expressed an opinion, * * * yet if he makes known that as a juror he would be uninfluenced, and that his verdict would be governed solely by the evidence and instructions of the court, he is competent to serve as a juror. Peterson v. State, 227 Ala. 361, 150 So. 156; certiorari denied 291 U.S. 661, 54 S.Ct. 439, 78 L.Ed. 1053; Jones v. State, 120 Ala. 303, 25 So. 204; Blevins v. State, 20 Ala.App. 229, 101 So. 478, certiorari denied Ex parte Blevins, 211 Ala. 615, 101 So. 482; Long v. State, 86 Ala. 36, 5 So. 443; Funderburk v. State, 145 Ala. 661, 39 So. 672; Hawkins v. State, 29 Ala.App. 221, 195 So. 762, certiorari denied 239 Ala. 532, 195 So. 765."

■■■■ A further ground of motion for a new trial was for newly discovered evidence. In support of such ground was the affidavit of Delene B. Wyatt, former

clerk and bookkeeper for the Court of County Commissioners of Chilton County, to the affect that affiant and D. C. Littlefield were engaged in a scheme to defraud the county; that defendant would bring to her a claim, together with invoice for lumber, which he had purchased from Littlefield, sign a claim in blank, and she would fill in above defendant's signature "for tires and tubes" in such amount as to correspond with the claim for lumber. The original claims and invoices were then disposed of. She asserts that all of this was done without the knowledge of defendant.

Affidavits for defendant assert that Mrs. Wyatt did not reveal the facts set out in her affidavit until after defendant was convicted and allege "at the time of this defendant's trial Mrs. Wyatt had already been convicted of forgery, and at the time of this defendant's trial there were still pending against her in the Circuit Court of Chilton County, Alabama, numerous other indictments, and said indictments are still pending against her."

To entitle a defendant to a new trial on the ground of newly discovered evidence, it must appear: The newly discovered evidence is such as could not, with reasonable diligence, have been discovered before the trial; would render probable a different result; is material and competent; and not merely impeaching or cumulative. Folmar v. State, 22 Ala.App. 317, 116 So. 110, certiorari denied 217 Ala. 410, 116 So. 112; Williams v. State, 245 Ala. 32, 15 So.2d 572.

We are of the opinion that the newly discovered evidence presented by this affidavit is not such as to render probable a different result on the retrial of the case.

■ On a motion for a new trial on the ground of newly discovered evidence much is left to the sound discretion of the trial court. Slaughter v. State, 237 Ala. 26, 185 So. 373; Osborn v. State, 30 Ala.App. 386, 6 So.2d 461, and authorities cited. We are unable to say such discretion was abused in this case.

■ After a full and careful consideration of the evidence adduced on a trial, we are of the opinion it was sufficient to sustain the verdict and the court should not be put in error for overruling the motion for a new trial, based on the ground the verdict was contrary to the preponderance of the evidence.

Defendant's counsel insists a new trial should have been granted because the verdict was contrary to the law, in that, the State has failed to show the alleged forgery of Connell's endorsement was made with the intent to defraud and has not proved the county did not receive the lumber or that any damage resulted to the county by said endorsement.

■ In a prosecution for forgery intent is a question for the jury, and an intent to injure or defraud may be inferred by the jury from the evidence and need not be proven by positive and direct evidence. Gooden v. State, 55 Ala. 178; McDonald v. State, 83 Ala. 46, 3 So. 305; McGee v. State, 20 Ala.App. 221, 101 So. 321.

■ To sustain a conviction for forgery it is not necessary to prove that damage or injury actually resulted. Hobbs v. State, 75 Ala. 1; Hall v. State, 31 Ala.App. 455, 18 So.2d 572; certiorari denied 245 Ala. 671, 18 So.2d 574; Warren v. State, 32 Ala.App. 302, 25 So.2d 695; certiorari denied 247 Ala. 595, 25 So.2d 698.

■ The court's refusal to grant the motion on the ground the verdict was contrary to the law was without error.

■ Charges refused to defendant were affirmative in nature; abstract, incorrect statements of the law or were invasive of the province of the jury.

The judgment of the circuit court is affirmed.

Affirmed.

### On Rehearing.

■ Appellant's brief in support of application for rehearing urges that the judgment of conviction is fatally defective because it fails to show defendant entered a plea to the indictment, or that, defendant

standing mute, the court caused a plea of not guilty to be entered for him. This question is argued for the first time in any of the proceedings in this case.

The Attorney General thereupon filed a motion for permission to file a motion in the Circuit Court of Chilton County, Alabama, for the purpose of correcting nunc pro tunc the said judgment or minute entry. It is averred that the judgment or minute entry appearing in the record is a true and correct copy of the judgment entry as it appears in the minute book of the Circuit Court of Chilton County, and that a writ of certiorari issued out of the Court of Appeals will not, in and of itself, be sufficient to correct said judgment or minute entry.

A hearing on said motion has been duly held.

This cause was argued orally and submitted in this court on May 24, 1951.

The case of Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350, was submitted a short time previously. Since several important questions of law were common to both cases, decision in the Huddleston case was deferred pending determination of these questions in the Wyatt case by this court and by the Supreme Court on certiorari, 257 Ala. 90, 57 So.2d 366.

We rendered an opinion affirming the lower court on August 12, 1952.

After a full and careful consideration by the court, sitting en banc, of the respective contentions of appellant and the State, we have reached the conclusion that the motion of the Attorney General should be denied.

The Attorney General admits that if we should grant the motion it would necessitate (1) withdrawing the opinion heretofore rendered by this court; (2) setting aside the submission of the cause; (3) granting permission to the State to file a motion in the Circuit Court of Chilton County for the purpose of correcting nunc pro tunc the judgment or minute entry; (4) the issuance of a writ of certiorari

to the clerk of said court to certify to this court the true and correct copy of the judgment entry after the proceedings to correct the judgment have been completed, followed by a resubmission of the cause, etc.

We are unwilling to establish such precedent, after a lapse of so long a time and where the above indicated proceedings are necessary, after a ruling has been made in this court and an opinion rendered.

Defendant's contention that there was no plea entered and no issue joined, is well taken.

The judgment entry, immediately following the overruling of the demurrer to the indictment recites: "Thereupon, on March 29, 1950, a trial is had."

■ "It is well settled that the judgment of conviction in a criminal case must affirmatively show that the defendant pleaded to the indictment, or that, standing mute, the court caused the plea of not guilty to be entered for him." Bray v. State, 16 Ala.App. 433, 78 So. 463; Tit. 15, Sec. 276, Code 1940; Jackson v. State, 91 Ala. 55, 8 So. 773; Sexton v. State, 29 Ala.App. 336, 196 So. 742; certiorari denied 239 Ala. 662, 196 So. 746.

Motion denied. Application for rehearing granted. Opinion corrected. Reversed and remanded.

## On Further Rehearing.

The Attorney General asserts in brief that our opinion on rehearing fails to recite the pertinent, essential and material facts in connection with the State's motion for permission to file a motion in the circuit court to correct the judgment or minute entry.

Most of the facts which the Attorney General requests that we set forth pertain to matters appearing in the record proper and in the State's motion and the affidavits attached thereto. Since the record proper and the motion will be before the Supreme Court in the event of certiorari,

we see no necessity for extending the opinion to include these matters.

█ The facts insisted on which do not appear in the record or motion are: (1) That counsel for defendant in open court at the hearing on this motion in the Court of Appeals admitted having written or prepared the defective judgment entry and delivered it to the clerk of the trial court for entry on the minute book. (2) That Bernard F. Sykes, assistant Attorney General representing the State of Alabama throughout these proceedings, offered at the hearing in the Court of Appeals to amend the State's motion to include the averment that he was not aware at the time of submission nor until the point was raised in appellant's brief that the judgment was defective.

We concluded that the motion should be denied because of the delay and the fact that an opinion had already been rendered. The facts stated in the brief do not cause us to change our conclusion.

Application overruled.