139 So. 243

### STATE ex rel. RUSSUM v. COUNTY COMMISSION OF JEFFERSON COUNTY et al.

6 Div. 28.

Supreme Court of Alabama.

Nov. 27, 1931.

Rehearing Denied Jan. 28, 1932.

Henry L. Anderton, of Birmingham, for appellant.

Cabaniss & Johnston, of Birmingham, for appellees.

**BOULDIN, J. .**

This proceeding by quo warranto is to test the constitutionality of an act approved May 27, 1931 (Gen. Acts 1931, p. 263), to abolish the office of coroner in counties of 300,000 or more population, and to transfer the powers and duties now or hereafter attaching to the office of coroner to the county commission in such counties.

The title and body of the act appear in the report of the case.

█ Indulging all reasonable presumptions in favor of legislative acts, we cannot say there is no rational basis for a population classification in dealing with the subject-matter. Manifestly the duties devolving upon the coroner in counties of large population are not only more frequent, but may be of greater public concern. The wisdom or policy of committing them to the governing body of the county is a legislative question. State ex rel. Ward v. Henry, ante, p. 224, 139 So. 277.

It is argued that a "County Commission," at the time of the passage of this act existed, or was supposed to exist, only in the county of Jefferson, and this by virtue of an act approved February 25, 1931 (Gen. Acts 1931, p. 149), purporting to create county commissions in counties of 300,000 or more population, but so restrictive in its provisions as to designate the county of Jefferson, and not to apply to a class of counties as they may come within the population basis.

That act, if valid, extended the county commission to the same class of counties as the act before us. But it is insisted that the Commission Act was so restrictive in its provisions as to designate the county of Jefferson, and fall under the ban of section 106 of the Constitution, and that the act now before us should be construed as likewise restrictive; a designation rather than a classification.

By a later act, approved June 16, 1931 (Gen. Acts 1931, p. 298), another county commission act for the same class of counties was enacted for the apparent purpose of curing the infirmities of the act of February 25th.

█ Granting that the Coroner Act now in question, approved May 27th, is to be construed in pari materia with other acts of the same session, it should be so construed with reference to the completed work of the session. In other words, the later and valid Commission Act, enacted at the same session with the Coroner Act, should, in fairness to the Legislature, be construed as expressive of the legislative intent, in so far as the one affects the construction of the other.

█ But the point is made that the Coroner Act must fall because no valid county commission act was in force at the time the Coroner Act was passed, and a later county commission act could not vitalize it.

The Legislature enacted the Coroner Act in the light of section 6770 of the Code, conferring all the powers of courts of county commissioners under existing and future laws upon the governing bodies of counties by whatever name called.

In view of this defined legislative policy, we think it not unreasonable to construe "County Commission" as meaning the governing body in any county within the population classification prescribed in the Coroner Act. We need not determine, therefore, whether an act is necessarily void because a later act is essential to give the former a field of operation.

█ The proviso requiring the duties of the coroner in the cases named to be performed by the president of the county commission, we think, is germane to the subject expressed in the title.

Conferring the duty on the "County Commission," a body with administrative and executive duties of police character, as well as legislative and judicial duties, broadly outlined in Code, § 6755, as amended by Acts 1927, p. 57, implies that such duties are to be performed through representatives of the commission; and it was competent for the Legislature to name such representative in

certain events without going outside the scope of the title.

We need not consider therefore whether this proviso, an amendment suggested by the Governor under the veto provisions of our Constitution, may be stricken as without the title, and the remaining act stand.

■ It is scarcely necessary to say we cannot consider the charges of personal interest on the part of legislators in the passage of the several acts as indicative of a purpose to apply the Coroner Act alone to Jefferson county. The same regard for the fundamental principles of our 'form of government which forbids such inquiry to defeat an act, also forbids such inquiry (a trial of the Legislature, so to speak) for the purposes of construction.

Construing a statute in the light of its historical background of former legislation and judicial decision rests upon fundamentally different principles.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

ANDERSON, C. J. (specially concurring).

Without committing myself to all that is said in the opinion of BOULDIN, J., I concur in the conclusion that the act in question is not a local act under section 110 of the Constitution, and does not therefore violate section 106.

The act provides for abolishing the office of coroner and transfers the duties to the county commission in all counties which now have, or may hereafter have under the succeeding federal census, a population of 300,-000 or more. It has been repeatedly held that this is not such an unreasonable classification as to render such an act a local one.

The manifest purpose of the act is to abolish the office of coroner, and to transfer the duties to the governing board of all counties that may come within the class mentioned; it matters not by what name the governing board may be designated, and which is fully provided for by section 6770, Code. True this section does not deal with or provide a president of the board, but I think so much of the act in hand as places the duties of sheriff upon the president of the commission means the chairman or presiding officer of the governing board of the county, and the act by its own force and effect will operate in every county attaining the population requirement without the aid of other legislation. The law abhors a vacuum.

Therefore, it matters not whether the first or last acts of the same Legislature dealing with the governing board of counties of this class, one or both, be valid enactments, as the present law is not dependent upon either of them. I cannot consent, however, that if the act was local when passed that it could be upheld as a general law coupling it up with or considering it in connection with a law subsequently passed. If it was dead when its passage was attempted, it was dead for good.