57 So.2d 350

**WYATT v. STATE.**

**5 Div. 330.**

Court of Appeals of Alabama.
May 15, 1951.

Rehearing Denied June 29, 1951.

L. H. Ellis, Columbiana, and J. B. Atkinson, Clanton, for appellant.

Si Garrett, Atty. Gen., and Bernard F. Sykes and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was formerly the clerk and bookkeeper of the Court of County Commissioners of Chilton County, Alabama.

By indictment returned and filed 18 November 1949, she was charged with forgery.

Count 1 of the indictment, omitting the formal parts, charged that the appellant, "with intent to injure or defraud, did falsely make, alter, forge, or counterfeit the endorsement of Dewey Robinson to an instrument in writing, in words and figures substantially as follows:

| First National Bank of Clanton<br>Clanton, Alabama<br>Pay this warrant, when properly endorsed, from the fund of Chilton County, Alabama, designated below.<br>W. M. Polk<br>Treasurer, Chilton County, Alabama.<br>By ——————<br>· Asst. Atty. in Fact.<br>Gasoline Fund | State of Alabama No. 554<br>County Commission of Chilton County<br>Clanton, Ala., Dec. 2 1946<br>$56.00<br><br>To the Treasurer,<br>Chilton County, Alabama.<br>The sum of Fifty Six & No/100....Dollars for Labr. |
|---|---|

Pay To Or Order Dewey Robinson

out of any moneys, not otherwise appropriated in Gasoline Fund of said County

J Lee Smith

President, County Commission of Chilton Co., Alabama.

with the following endorsement on the back thereof: "Dewey Robinson."

Count 2 of the indictment carries the same charge as the first, with the additional alternative averment that appellant did, with intent to injure or defraud, utter and publish as true the falsely made, altered, or counterfeited endorsement of "Dewey Robinson," the payee set out in said instrument, knowing the same to be falsely made, altered, etc.

Her jury trial resulted in a verdict of "guilty as charged in the indictment."

Judgment of guilt was entered pursuant to the verdict, and a sentence of imprisonment in the State penitentiary for a term of three years was imposed by the court.

Appellant's motion for a new trial being overruled, appeal was perfected to this court.

As before stated, this indictment was returned 18 November 1949.. On 7 March 1950 the appellant filed a motion to quash the indictment, the substantial grounds of said motion being that the indictment was not signed by the foreman of the grand jury, and that John B. Deramus, whose name appears on the indictment as foreman was not in fact the foreman of the grand jury that returned the purported indictment. A copy of the minutes for 29 August 1949, relative to the impaneling of the grand jury, was attached to and made a part of the motion.

This motion to quash was set for hearing on 9 March 1950. However, on that day the State filed a petition requesting that the court correct the minutes recording the organization of the grand jury of 29 August 1949. This is the same minute attached as an exhibit to appellant's motion to quash.

As grounds for its petition the State averred that the said minute as entered by the clerk did not speak the truth in that persons in fact excused are shown as constituting the grand jury, while the persons shown as excused were in fact the grand jury, and that it appears from the records and quasi records of the court that the minute entry contains a mere clerical error which the court was empowered to correct.

The petition further avers that this clerical error affirmatively appears from the following:

"(a) from the original venire as returned by the sheriff and as marked by the Clerk and now filed with said Clerk,

"(b) from the order of this Court convening a special session or term of the grand jury for October 25, 1949, dated October 21, 1949 and appearing in Volume 8 of said minutes at page 333, together with a Writ to the sheriff dated October 21, 1949 to summons the grand jury and listing the correct names of said grand jurors returnable October 25, 1949 and appearing in Volume 8 of said minutes at page 346, and 347;

"(c) From Volume 17 of the final record kept by the Clerk of this court showing

the organization of the said grand jury which reconvened or assembled on October 25, 1949;

"(d) From the report of said grand jury made November 18, 1949, and signed by John B. Deramus, appearing in Volume 8 of said minutes at pages 342, 343, 344;

"(e) From the minute entry here sought to be corrected:

"(f) And from other records and quasi records of this court."

The appellant filed objections to proceeding with the hearing on the State's petition to amend the minutes nunc pro tunc, asserting that the minutes were entered more than 30 days prior to the filing of the petition, and that therefore the court had lost control over said minutes; that the amendment of the minutes proposed was not a mere clerical error; and that no notice of said petition was or has been served upon appellant.

The court overruled appellant's objection and proceeded to hear the State's evidence in support of its petition to amend the minutes nunc pro tunc, and upon completion of the hearing the court entered an order correcting the minutes as prayed in the petition. To this ruling of the court the appellant reserved an exception.

The appellant thereupon filed a motion to amend and set aside the order granting the State's petition to amend the minutes. This motion was overruled and appellant excepted.

Thereafter the court overruled appellant's motion to quash the indictment, there being no evidence to sustain the motion after the minutes had been corrected by the amendment nunc pro tunc. Exception was reserved to this ruling.

The appellant's appearance in all of the above proceedings was special.

The correctness of the court's rulings in all of the above instances depends upon whether amendment of the minutes was to correct a clerical error.

In Sisson v. Leonard, 243 Ala. 546, 11 So. 2d 144, 146, Justice Foster reviewed and summarized the principles relative to the power of a court to correct its records by amendments nunc pro tunc. We here quote from that opinion:

"At common law, courts were not authorized to amend judgments after the lapse of the term at which they were rendered, *except for clerical errors*. Van Dyke v. State, 22 Ala. 57; Buchanon v. Thomason, 70 Ala. 401; Whorley v. Memphis & C. R. Co., 72 Ala. 20, 25; Robertson v. King, 120 Ala. 459, 24 So. 929; Chamblee v. Cole, 128 Ala. 649, 30 So. 630; Wynn v. McCraney, 156 Ala. 630, 46 So. 854; Campbell v. Beyers, 189 Ala. 307, 66 So. 651; 34 Corpus Juris 215. *Notice of the proposed amendment was not then necessary.* Nabers v. Meredith, 67 Ala. 333; Ware v. Kent, 123 Ala. 427, 26 So. 208, 82 Am.St.Rep. 132.

"In 1824 a statute was adopted and it appeared in Clay's Digest, 322, section 55; Code of 1852, section 2401; Code of 1867, section 2807; Code of 1876, section 3154, and in all subsequent codes, whereby judgments could be amended at a subsequent term for any clerical error, mistake in the calculation of interest or other mistake of the clerk (now also of the register).

"An Act of March 1, 1881 (page 66), provided for ten days' notice of all proceedings in courts of record to amend judgments, decrees or orders nunc pro tunc, provided it should not apply to clerical errors, nor to amendments made during the term.

"This was made section 2867, Code of 1886, and as codified it makes notice essential to a motion to amend nunc pro tunc a judgment or decree of a court of record, 'if the amendment be not of mere clerical errors.' And in that code there was also brought down the statute first enacted in 1824, supra, providing for the amendment of clerical errors and mistakes of the clerk, making it section 2836. Those two statutes have been brought down to date as sections 566 and 567, Title 7, Code of 1940. *But without those statutes all courts of general jurisdiction have the power to correct clerical errors, after the expiration of the term, when the record affords matter upon which to base such correction.* Otherwise 'after its final adjournment its judgments are (were) absolute and conclusive, and the court has (had) no power over them.'

"This seems to amend the common law so as to add the power of amendment to 'other mistake (s) of the clerk' (though not merely clerical). Whorley v. Memphis & C. R. R. Co., supra. *For the court had the inherent power to amend after the term all clerical errors.* We take it that a mistake 'in the calculation of interest' as set out in the statute is also a clerical error.

"We now have other mistakes of the clerk, not a mere clerical error, which by statute may be corrected by a circuit court or one of like jurisdiction, section 567, supra; whereas section 566 and its predecessors apply to all courts of record." (Emphasis ours.)

In Ford v. Tinchant & Bros., 49 Ala. 567, the Supreme Court stated that: "Clerical errors are not those alone which the clerk makes. They include all such, being matters of record, as intervene in the progress of a cause, whether committed by the court or the counsel, to which the judicial sanction or discretion cannot reasonably be said to have been applied."

■ Clerical errors are not only those made by the Clerk, but also those mistakes apparent on the record, made by counsel, or even by the court. Wilder v. Bush, 201 Ala. 21, 75 So. 143.

■ Further, "A clerical error is one made by a clerk in transcribing, or otherwise, and, of course, must be apparent on the face of the record, and capable of being corrected by reference to the record only." Trott v. Birmingham R. L. & P. Co., 144 Ala. 383, 39 So. 716, 717.

The requirement that clerical errors can be corrected by reference to the record only reflects the view of the English cases, which rule has always prevailed in this jurisdiction. Lilly v. Larkin, 66 Ala. 122.

■ However, as stated in Freeman on Judgments, Vol. 1, Sec. 164, "the term 'record' as used in this connection has not ordinarily been given a strict technical significance but covers all writings, minutes, entries, and files in the case, which are sometimes designated as 'quasi' records."

In Whorley v. Memphis & Charleston R. Co., 72 Ala. 20, our Supreme Court stated that a court was authorized to look at all papers in the cause, and may make the correction "when there is some memorial, paper, or other minute of the transaction in the case, from which what actually took place can be clearly ascertained and known."

In the hearing on the State's petition to amend the minute there was received in evidence:

(a) The questioned minute entry showing the organization of the grand jury on 29 August 1949.

This entry recites that the sheriff turned into open court the venire of jurors which had been duly and legally drawn and summoned according to law to supply the grand jury for this term (July 1949) of court.

The venire is copied in the minute, and shows 32 qualified citizens of Chilton County, including the name of John B. Deramus. The endorsement of the sheriff on the venire shows that a summons was served on all of the venire, except six, whose names are set forth.

This minute then shows that all of the persons answering were duly and legally sworn and examined concerning their excuse, exemptions, and qualifications; that the court excused certain persons, the names of 18 of the original venire facias then being set forth as excused, among this 18 listed as excused being *John B. Deramus.*

The next paragraph of the minute then recites that the jury was drawn in the manner required by law and that *John B. Deramus* was duly selected as foreman and duly sworn as such.

The minutes then proceed to list 14 persons who were selected and comprised the grand jury. Among these 14 are the names of the six persons listed by the sheriff on his endorsement to the venire as not having been served.

(b) The order of the court that the grand jury that was organized and empanelled on 29 August 1949, and which was recessed on September 1, 1949, subject to further orders of the court, be reconvened on 25 October 1949, and directing the clerk to prepare a list of the members of the grand jury and issue same to the sheriff, and further ordering the sheriff to summons the

persons named on the list, constituting the present grand jury of Chilton County.

(·c) The order of the clerk to the sheriff to summon "the following named persons —to appear and serve at a present session of the present grand jury, which has heretofore been organized and heretofore recessed, and which is now ordered to reconvene on Tuesday, October 25, 1949, at 10 o'clock A. M. at the Court House in Clanton, Alabama, as provided by law. There then follows the names of 18 persons, being the same as those listed as excused in the minutes of 29 August 1949, pertaining to the organization of the Grand Jury. The sheriff's return on the clerk's writ shows that all of the eighteen persons named were summoned. John B. Deramus was one of the names appearing on this writ.

(d) The report of this special session of the Grand Jury, beginning "We, the Grand Jury, empanelled for the July Term having been called into special session," etc. This report was submitted on 18 November 1949, and is signed "John B. Deramus, Foreman, Grand Jury."

(e) The final record of the case of Delene B. Wyatt, as it appears at page 71 of Final Record Book No. 17 of the Circuit Court of Chilton County. This record, in part, sets forth the 18 names as constituting the Grand Jury, being the same 18 shown to have been excused in the Minutes of 29 August 1949.

(f) The original of the venire facias issued by the Clerk to the sheriff on 23 August 1949, together with the Clerk's marks made thereon, after the sheriff's return, at the time the Grand Jury was being organized and empanelled. The court sustained appellant's objection to questions addressed to the Clerk seeking the Clerk's explanation as to the meaning of the marks made by him.

Appellant's counsel objected to the admission of the original writ of venire facias on the ground that the same had been recorded, and contended that only the recorded copy should be received in evidence. The recorded copies did not contain the notations made by the Clerk as above mentioned.

The original copy of the venire facias was in our opinion clearly admissible in this case. Under Sec. 198(12), Title 13, Code of Alabama 1940, it is the duty of the clerk to keep all papers, dockets, books and records belonging to his office with care and security. This venire facias was clearly a paper to be kept by the clerk, and must be considered, if not record evidence, at least quasi record evidence in this case. The clerk testified that the notations were made by him at the time of the organization of the grand jury. These notations were but·a memorial made by the clerk of the organization of grand jury, and made as a paper required to be kept in his office. The entire contents of the venire facias were therefore properly before the court.

These notations made by the clerk are as follows: To the right of each of six names shown by the Sheriff's return as not served there is written either 'out co.,' or 'not found,' or 'U. S. Army.'

To the right of eight names appearing in the venire facias is written: 'ex.'

A check with the minutes of August 29 shows that these 14 names carrying the above notations, which we think are abundantly clear in their meanings, are the very 14 names shown in the minutes sought to be amended as being the names constituting the grand jury.

These notations also show that immediately to the left of each name on the venire facias there appears an X·mark, except by the names of the six persons not served. We think the lower court perfectly justified in inferring that such check marks indicated the names of those persons answering the summons.

Still further to the left of the names, and separated from the other X marks by the numbers respectively designating each name on the venire facias appear other X marks, placed only by those names which also bear the notations showing either that such venireman was not served by the sheriff, or that he had been excused. This mark appears by 14 names and comprise the list shown in the questioned minutes as constituting the grand jury.

Also to the right of all names on the venire facias, except those shown not to have been served, or excused, appear numbers 1 through 18 in sequence. The names so numbered are the persons shown on the questioned minutes as having been excused. Thus, we think the marks taken together are self explanatory, and by irresistible inference clearly show just who was selected on the grand jury, and who was not served, or were excused.

It is our opinion that the questioned minutes of 29 August show a miscopying by the clerk on their face.

In the first place, of *eighteen* names shown by the minutes as being those of the venire who were excused from jury duty appears the name of *John B. Deramus*. In the very next paragraph it is stated that: "Thereupon, the Grand Jury for this term of Court was drawn and selected in the particular mode and manner required by law as Grand Jurors for this term of this court and thereupon *John B. Deramus* was selected as foreman and he was by the court legally and duly sworn as such Foreman," etc.

In the second place, of the *fourteen* names shown by the minutes as forming the Grand Jury, six of these persons were shown by the sheriff's return as not being summoned. The rational conclusion is that these six unserved persons did not appear, and therefore were not sworn and empanelled as Grand Jurors.

■ In the third place, all officials are presumed to carry out their lawful duties. The duty of the circuit judge was to empanel a Grand Jury of *eighteen* members, and it would be a gross abuse of his official duty to empanel a Grand Jury of only four-teen members.

■ The above facts we think make abundantly clear that the questioned minutes of 29 August 1949 contained mere clerical errors resulting from miscopying by the clerk. Clearly, the court was authorized to correct such error, without notice to the appellant, if the record furnished sufficient evidence to show what in truth and fact the minutes should reflect.

The clerical error being apparent, we now look to the record or quasi record evi-dence upon which the court based its correctional nunc pro tunc amendment of the minutes.

Undoubtedly, the order of the court to the clerk mentioned in paragraph (b) above was a part of the record of this cause, as was the order of the clerk issued to the sheriff pursuant to the order of the court.

This order of the clerk mentioned in paragraph (c) above, directing the sheriff to summons the eighteen named persons to reconvene as the Grand Jury "which was heretofore organized" was clearly a part of the record, and *lists as the Grand Jury* the 18 persons shown in the questioned minutes as those of the venire who were excused.

The report of this special session of the Grand Jury, signed by *John B. Deramus*, as foreman, likewise was a part of the record of this cause, and as such admissible.

The original venire facias, with the clerk's notations above described, also was properly considered by the court, for if not record evidence it was clearly quasi record.

■ The above record and quasi record evidence tended to clearly show the existence of a mere clerical error in the minutes of 29 August 1949, and was amply sufficient to authorize the court, in the light of reasonable inferences to be drawn therefrom, to enter its amendment nunc pro tunc correcting such clerical error, and this of course without notice to the appellant.

Other evidence was received in the hearing on the petition to amend. Through the clerk there were introduced two sets of cards, one containing fourteen names, and one containing 18 names. Around the set of fourteen cards, which contained the names shown in the questioned minutes as being the grand jury was a wrapper indicating that these fourteen persons were not found or were excused, while around the 18 cards bearing the names shown in the questioned minutes as being excused was a wrapper indicating that these 18 names composed the grand jury for the July 1949 term. The clerk testified that these cards were grouped by him and the notations and the wrappers were made by him on the day

the grand jury was organized, and have been in his possession ever since.

We pretermit consideration as to whether these cards might be considered as quasi record evidence, and also pretermit consideration as to the legal efficacy of the Final Record mentioned above in paragraph (e), for as above stated, the other admitted record and quasi record evidence fully authorized the amendment made.

It likewise follows that, the minutes being amended, the court properly denied appellant's motion to quash the indictment.

Counsel for appellant further contend that the court erred in amending the minutes because the minutes of 29 August 1949 pertaining to the organization of the grand jury on that date show that the clerk directed the sheriff to summons only 32 persons to serve as grand jurors, and that Section 30, Title 30, Code of Alabama 1940 required that 50 persons be summoned.

■ No petit juries being need for the week of 29 August 1949, and only a grand jury being desired, the court was authorized to draw such number of veniremen as he deemed necessary. Patterson v. State, 171 Ala. 2, 54 So. 696.

The appellant filed a demurrer to the indictment. The material point raised by the demurrer was that the alleged forged endorsement was of an instrument possessing no apparent legal efficacy in the absence of an averment of extrinsic facts, in that the instrument set out in the indictment was signed "J. Lee Smith, President, County Commission of Chilton County," whereas a proper warrant could only be drawn by the Chairman of the governing body of Chilton County, which is the "Court of County Commissioners."

■ It is only necessary that a forged instrument possess some apparent legal efficacy; that there is a reasonable possibility that it may operate to cause injury. Hall v. State, 31 Ala.App. 455, 18 So.2d 572.

While hypertechnically the proper appellation of a county governing body is "Court of County Commissioners" where a county is operating under such governing body, yet in our statutes dealing with county government the term "County Commissioners" is frequently used interchangeably with "Court of County Commissioners" in designating the governing body. See Sections 73, 78, and 79, Title 12, Code of Alabama 1940.

Also, while the presiding officer of a county body is technically designated as "Chairman," the term "President," merely means the presiding officer of the body, or its chairman. See State ex rel. Russum v. County Commission of Jefferson County, 224 Ala. 229, 139 So. 243.

■ Thus, though a county warrant is a creature of statute, and must conform in all its phases to the laws appertaining to its issuance to be valid, and the subject of forgery, it is our conclusion that the warrant as drawn in this case, unless a mechanical and hypertechnical mode of reasoning be resorted to, was drawn with sufficient substantial compliance to statutory regulation, possessed apparent legal efficacy, and carried with it a possibility of operating to cause injury.

It is further to be noted that the instrument to which the endorsement was alleged to have been forged also contains in the upper left hand corner a check from the tenor of which the payee is Dewey Robinson, whose name is alleged to have been forged in the endorsement.

Appellant's counsel further urge that the court below, in imposing sentence, erroneously construed this indictment as charging forgery in the second degree, in that under our statute defining forgery in the second degree only the endorsement of a bond, bill single, bill of exchange or promissory note is denounced, and contends that a county warrant being none of the above mentioned instruments, the endorsement of a county warrant can only be forgery in the third degree.

Section 200, Title 14, Code of Alabama 1940 defining forgery in the second degree is as follows: "Any person who, with intent to injure or defraud, falsely makes, alters, forges, counterfeits, or totally obliterates any will of real or personal property, or any deed, conveyance, or other instrument, being or purporting to be the act of

136

another, by which any right or interest in property is, or purports to be transferred, conveyed, or in any way changed or affected; or any bond, bill-single, bill of exchange, promissory note, or any indorsement thereof, the forgery of which does not constitute forgery in the first degree; or any warehouse receipt, or receipt for the payment of money, or any instrument or writing, being or purporting to be the act of another; or any entry in any book account, by which any pecuniary demand or obligation is or purports to be created, increased, discharged, or diminished; or who, with such intent, utters and publishes as true any falsely made, altered, forged, or counterfeited instrument, writing, indorsement, or entry, specified or included in this section, is guilty of forgery in the second degree."

 Chapter 44 of Title 14, Sections 199–208, defining and setting forth the three degrees of forgery, and the constitutent elements of each offense, is completely absorptive of the common law offense of forgery, which at common law was a misdemeanor.

Section 200, pertaining to forgery in the second degree is broad in its terms.

The very first phrase thereof makes it an offense for any person, with intent to injure or defraud to alter any instrument, being or purporting to be the act of another, by which any right or interest in property is or purports to be in any way changed or affected.

 The writing of the payee's name falsely and fraudulently on the back of the instrument is just as much a forgery as any other false writing thereon. The endorsement of the payee's name is in every sense a part of the instrument itself. U. S. v. Jolly, D.C., 37 F. 108. The endorsement is the very act that served to ultimately transfer property under the instrument, which showed on its face the necessity of such endorsement if cash were to be realized thereon.

The court did not therefore err in its construction of the indictment as to the degree of forgery charged.

The evidence presented by the State tended to show that this appellant was the clerk and bookkeeper for the Court of County Commissioners of Chilton County, Alabama, and had been such during the year 1946; that a payroll for the month of November 1946, for District 3 of Chilton County was delivered to appellant by a road foreman in charge of construction, and at the time of delivery this payroll did not contain the name of "Dewey Robinson." This payroll was received in evidence and it shows the name Dewey Robinson as the last name on the list, and that Robinson was due $56.00 for 14 days' work at the rate of $4.00 per day, with Warrant No. 554 appearing opposite Robinson's name.

Evidence presented by the State further shows that the warrant described in the indictment, being Warrant No. 554, in the amount of $56.00, payable to Dewey Robinson was prepared for issuance by the appellant and that the warrant was signed by the county treasurer, and paid by the drawee bank.

Dewey Robinson testified that he had not worked for Chilton County during the time covered by the payroll, that he did not endorse the warrant and had not received any money on it, and that he had not authorized any one to sign his name on the warrant.

The State introduced several standards of the known or admitted handwriting of the appellant. Among these known standards of handwriting of appellant the State offered *the face only* of three gasoline fund warrants, received in evidence as State Exhibits C, D, and E. These particular exhibits will give rise to a later discussion.

Mr. Keener, a Principal Examiner of Public Accounts for the State, with fifteen years experience in such work, testified that he had seen the appellant writing while posting books, and knew her handwriting.

Over appellant's objection that he was not sufficiently familiar with appellant's handwriting to express an opinion, and further, that the question as framed called for a positive statement that certain standards were in the handwriting of appellant, rather than calling for an expression of his opinion thereon, this witness was permitted to state that these standards were in the handwriting of the appellant.

Without intimating that merit attached to this objection, it appears that appellant admitted during her testimony that the writings on all of the standards was written by her. Thus if any error accompanied the reception of the exhibits, such error was obviated by appellant's admissions as to the standard writings. Buford v. State, 14 Ala.App. 69, 71 So. 614.

C. D. Brooks, of the State Department of Toxicology, who qualified as a handwriting expert, testified that in his opinion the same person who had written the standards had also written the endorsement "Dewey Robinson" on the back of the warrant set forth in the indictment.

Testifying in her own behalf the appellant admitted that she did add the name Dewey Robinson to the payroll, but maintained that she did so at the request of a county commissioner who was dead at the time of the trial. Appellant denied that she endorsed the name "Dewey Robinson" on the warrant in question, but stated that she delivered the unendorsed warrant to the now deceased county commissioner or to some other person for delivery, and had no knowledge as to the forgery.

The defense also introduced as witnesses three bankers and an ex banker whose testimony was to the effect that the endorsement was not in the handwriting of the appellant.

There was further defense testimony tending to show that Dewey Robinson had worked for the county about the time covered by the warrant.

During the cross examination of the witness Keener the record shows the following occurrence:

"Q. Posting in various books. Did you stand there and see her write and watch her signature? A. She wouldn't be putting her signature in a book she would be posting figures. (*Laughter and Applause.*)

"The Court: Mr. Sheriff, let's have order in the Court. The audience will refrain from any demonstration one way or the other. Let's refrain from any demonstration. The audience is not to applaud or to make any demonstration during the proceeding of the trial.

"Mr. Ellis: If the Court please, in view of that demonstration over a very simple matter on cross examination, the defendant moves for a mistrial.

"The Court: Gentlemen of the jury, you are not to consider any laughter or any other demonstration as being evidence in this case. Exclude that from your mind and your consideration entirely and base your verdict purely upon the evidence that comes from the witness stand and not from any outward movement or any other display on the part of anyone—base your verdict purely upon the evidence that comes from the witness stand. Do not let any extrinsic matter influence you one way or the other. Overrule the motion.

"Mr. Ellis: We except.

"Mr. Atkinson: We except."

Where there is misconduct on the part of an audience during a trial, it should be suppressed in such manner as to impress upon the jury the impropriety and injustice of such demonstration. The court did clearly instruct the jury in this instance as to the impropriety of the conduct of the spectators at the trial, and the court's remarks should certainly have tended to dissipate the effect of this conduct on the minds of the jury. On appeal it must be made to appear that some action or non action on the part of the court under such circumstances probably injuriously affected the substantial rights of the accused. The spectators having been properly admonished and the jury having been instructed to base its verdict purely upon the evidence, the motion for a mistrial was in our opinion properly overruled. Bass v. State, 219 Ala. 282, 122 So. 45; Mims v. State, 25 Ala.App. 306, 145 So. 588. Further, action on a motion for a mistrial is largely in the sound discretion of the trial court. Swindle v. State, 27 Ala.App. 549, 176 So. 372.

Appellant's counsel also contend that certain of these admitted standards of handwriting of appellant should not have been admitted for the reason that they represented claims against the county which were questioned in the auditor's report, which report had been printed in a newspaper of wide circulation in Chilton County, or if

not questioned, the claims were for materials or services which might be considered extravagant by taxpaying citizens.

When these standard writings were offered in evidence no such grounds were assigned in support of the objections interposed. This in itself would preclude a reversal of this cause because of the ruling of the court on the objections to the admissions of these standard writings.

■ Further, these claims show clearly they were not made by Mrs. Wyatt, but by the various creditors of Chilton County in the regular course of business. These creditors certified the correctness of these claims above their own signatures, which were acknowledged before Mrs. Wyatt as a Notary Public. Merely because Mrs. Wyatt may have prepared these claims for the creditors, and acknowledged their signatures, purely a ministerial act, could not rationally have prejudiced her in the minds of the jury. The court made it abundantly clear to the jury that such writings were admitted solely for the purpose of comparison with the alleged forged signature on the warrant set forth in the indictment.

Reverting to Exhibits C, D, and E, which were Gasoline Fund Warrants, it is clear from the record that only the face of these instruments were introduced by the State, and for the limited purpose of serving as standards of appellant's writing. She admitted that the handwriting on the face of these warrants was hers.

Thereafter, and after it had again been made clear that only the face of the warrant had been introduced she was questioned on her direct examination as to whether she had written the respective endorsements on the back of the warrants. She denied that she had.

Over appellant's objection the State was later permitted to offer expert testimony tending to show that the endorsements were also in appellant's handwriting.

Appellant's counsel now contends that the court erred in overruling his objection, which we note was in general terms only, to the testimony tending to show that the endorsements were in appellant's handwriting. Counsel asserts that this point is governed by the doctrine of Crow v. State, 28 Ala.App. 319, 183 So. 897, to the effect that in a prosecution for forgery where the State seeks to show guilty knowledge by proof of other forgeries, then the State has the burden of proving these other forgeries as well as the one averred in the indictment.

■ This doctrine has no application to the present question. The face only of the instruments were introduced into evidence by the State. The appellant herself injected into evidence the question as to whether the endorsements on the instruments were made by her. She denied that they were. Having thus injected this question, she cannot now complain that the State was permitted to introduce evidence tending to rebut her testimony in this regard.

The appellant urges that the lower court erred in overruling her motion for a new trial because of alleged bias on the part of certain jurors and one venireman.

She complains that the venireman Reedie Taylor was biased, and by evasive answers on his voir dire examination concealed this prejudice.

After careful qualification by the court this venireman, on voir dire examination, was asked by counsel for appellant if he had not gone to the Attorney General's Office while the audit was in progress. Taylor stated that he had, but that he had not seen anyone in the Attorney General's Office. He further stated that he had read practically nothing in the Union Banner concerning the audit, and could not remember ever having made any statement to anyone concerning the guilt or innocence of the county officers or others who were being investigated.

This venireman was not questioned further, and no challenge for cause was interposed. Later he was peremptorily challenged, and did not serve on the jury.

On the hearing of the motion for a new trial the appellant introduced affidavits tending to show that Taylor had attended a meeting with several other citizens of Chilton County to "formulate methods of procedure concerning the audit which had been made or was in process of being

made, of the Commissioners Court of Chilton County, and to ascertain if there had been criminal violations by County Officials and other parties concerning the county funds of Chilton County." There were so few at this meeting that it adjourned, and apparently no further meeting was had.

In reply the State introduced an affidavit by Taylor to the effect that while he had attended the meeting abovementioned, he did so as a taxpayer, and for the purpose of discussing with others what would be for the best interest of Chilton County if the audit, when completed, did disclose misappropriation of funds. Very few attended this meeting and it adjourned with some talk of a future meeting. Taylor never heard of any other meeting, if one was had. Taylor stated further that at the time he served as venireman he was not prejudiced and that his mind was open, and had he been selected he was free to go by the evidence and the court's instructions in passing on the guilt or innocence of the appellant.

As to the jurors Cofer and Childers the appellant introduced affidavits to the effect that either or both of said jurors were familiar with the articles published in the Union Banner and had talked with numerous citizens of Chilton County concerning the misused funds of the county, and these citizens had expressed the opinion that appellant and others were guilty, etc.

The State introduced counter affidavits from these jurors, and in fact from each and every juror trying this case, in which each asserted that he was not prejudiced or biased against the appellant at the time they qualified as jurors, and had no fixed opinion as to her guilt or innocence, and felt at the time he could render a fair verdict based on the evidence; and further that the verdict reached was based only on the evidence submitted on the trial and the court's instructions as to the law, and that such evidence and instructions constituted the sole basis of his verdict of guilty.

■ To justify a challenge for principal cause there must be a statutory ground, or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the court. Brown v. Woolverton, 219 Ala. 112, 121 So. 404, 64 A.L.R. 640.

■ The true test is the state of the jurors mind or feeling at the time he is selected and qualified on the venire. Even though he may previously have expressed an opinion, or heard part of the evidence and argument on a former trial, or has expressed an opinion based on rumor or newspaper accounts, yet if he makes known that as a juror he would be uninfluenced, and that his verdict would be governed soley by the evidence and instructions of the court, he is competent to serve as a juror. Peterson v. State, 227 Ala. 361, 150 So. 156, certiorari denied 291 U.S. 661, 54 S.Ct. 439, 78 L.Ed. 1053; Jones v. State, 120 Ala. 303, 25 So. 204; Blevins v. State, 20 Ala.App. 229, 101 So. 478, certiorari denied Ex parte Blevins, 211 Ala. 615, 101 So. 482; Long v. State, 86 Ala. 36, 5 So. 443; Funderburk v. State, 145 Ala. 661, 39 So. 672; Hawkins v. State, 29 Ala.App. 221, 195 So. 762, certiorari denied 239 Ala. 532, 195 So. 765.

■ The above principle, as applied to the developed evidence, in our opinion necessitates approval of the lower court's action in denying appellant's motion for a new trial because of bias or prejudice on the part of the jurors or venireman. Certainly it renders unjustified on our part any interference with the court's conclusions in the premise.

Appellant further argues that the lower court's order denying her motion for a new trial should be reversed for the reason that immaterial and irrelevant evidence was received in evidence in the hearing on the motion at the instance of the State.

This alleged irrelevant evidence consists of an affidavit made by appellant in connection with another case. In it appellant seeks to exonerate W. E. Huddleston from any wrong doing in connection with forgery of names on certain Chilton County warrants payable to Dalton Connell and Robert Connell.

It appears however that as part of her evidence in support of her motion for a

new trial the appellant introduced the entire report of the auditors as same was published in the Union Banner. In this article the transactions concerning the Connells and Huddleston were extensively set forth and commented upon.

 Most of this material as published was irrelevant to this case. However it was introduced into evidence by the appellant. The affidavit now complained of tended to rebut parts of this published report. It is now well settled that a court will not be put in error because it permits the introduction of irrelevant evidence where such evidence is in rebuttal to previously admitted irrelevant evidence introduced by the adversary party.

Five of the charges requested in writing by the appellant were refused. Some fourteen were given. Three of the refused charges were affirmative in nature, and properly refused under the developed evidence.

Charges aa. and bb. were adequately and fully covered in the oral charge of the court.

It is our conclusion that no error infects this record which probably injuriously affected the substantial rights of this appellant.

The trial judge in our opinion conducted this difficult trial, and all proceedings connected therewith, with utmost patience, and was diligent in his efforts to protect the rights of all parties concerned.

In connection with the ruling on the motion to amend the minutes, diligent and able counsel, as they state, have in a superabundance of caution, also brought this question to this court by petition for a writ of error, and also a petition for an alternative writ of mandamus.

In our opinion the question was sufficiently and properly presented by the record on this appeal.

What we have written above is also decisive of the above mentioned petitions, and they are hereby denied.

This cause is therefore due to be, and hereby is, ordered affirmed.

Affirmed.

## On Rehearing

In brief in support of the application for rehearing counsel for the appellant make the following request:

"If this Honorable Court determines not to grant the application for rehearing and deny same, appellant respectfully requests the Court to make a full statement of the evidence, in the Opinion, showing the voir dire examination of the jurors, Reedie Taylor, John M. Cofer and C. R. Childress; the affidavits of J. C. Pattillo and Ralph P. Eagerton and the affidavits of said jurors and that a full statement of the evidence as to the introduction of exhibits 'A,' 'C', 'D' and 'E' by the State and the testimony of C. R. Keener that the writing on warrant No. 554 (Exhibit 'A') was the handwriting of Mrs. Wyatt, the appellant, as shown on record page 115, where the solicitor asked the witness, Keener, this question:

"'Q. When you stated that was her handwriting you were referring to warrant No. 554?' and the witness answered 'yes.' Also, as to the introduction of the exhibits 'A', 'C', 'D' and 'E'; the affidavits of different citizens showing that exhibits 'I', 'J', 'K' and 'L' and also the publicity shown to have been given on the trial of this case, together with the editorial of the Union Banner when appellant's cases were continued, to the end that these matters may be reviewed by our Supreme Court and in compliance with the rule as announced in Postal Telegraph-Cable Co. v. Minderhout, 195 Ala. 420, 71 So. 91."

We will attempt to comply in so far as we are able.

As to the voir dire examination of the venire, the record shows that the court questioned the entire venire fully as to their general qualifications; also as to their relationship to any of the attorneys participating in the trial. The record further shows the following additional examination by the court, and attorneys, during the voir dire examination of the venire:

"The Court: Do you have a fixed opinion as to the guilt or innocence of the Defendant, if so, hold up your right hand? Have you heard the case talked about and

discussed in such a way and manner which has influenced you in any way or which might tend to bias your verdict? If so, hold up your right hands?

\* \* \* \* \* \*

"The Court: Is there any reason whatsoever that you know of why you can't sit on the Jury and a true verdict render according to the evidence? Please indicate at this time. Any other questions now, gentlemen, on the part of the State or the the Defendant?

\* \* \* \* \* \*

"Mr. Ellis: I notice in the report of the Grand Jury—how many of you read that article in the Union Banner? It will not disqualify you: I just want to know how many of you read it. The audit was published in the Union Banner. Those who do not hold up their hands I will assume have not read it. It was published in series \* \* \*

"The Court: Hold up your hands again, gentlemen, let's see how many that was.

"Mr. Ellis: I don't think that makes any difference, if the Court please. That's not the point I am making. Now the next question is one that is really vital. You gentlemen have been fair enough and frank enough to admit that you have read those articles and the first thing I want to ask you is do you think that those would bias your verdict or tend to bias your verdict or whether or not you could base it on the testimony that comes from the witness stand? In other words, do you think that that would tend to bias your verdict, if so, tell me so. If you do think that it would bias your verdict I want to ask you to be fair enough to tell us so. I am going to depend upon what you say about it:

"The Court: In other words, gentlemen, if you are biased in your opinion by having read the Union Banner or those articles Mr. Ellis referred to hold up your right hand and indicate to the Court at this time.

"A Voice: Over here.

"Mr. Ellis: What is your name, sir?

"A Voice: Vernon Robinson.

"Mr. Ellis: Mr. Robinson. I think I should thank you for your frankness in admitting that you would be biased and if your Honor please I think he should be excused.

"The Court: Excuse Mr. Robinson.

"Mr. Ellis: Now is there any other gentleman who thinks he would be biased by it. I want to see if your minds are free to disregard that and not be biased by it at all. If you think you would be, kindly be as fair as Mr. Robinson was and tell us so. If you don't say you would be why we will accept that and go ahead."

There then follows a further individual examination by appellant's attorney of the venireman Taylor. We have in our original opinion set out the material portions of this examination, and will not again repeat it.

Many affidavits were introduced by appellant in her motion for a new trial. We of course did not attempt to comment on them or set them out, since the legal principles governing the lower court's action on the motion fully justified the court's ruling. Among these affidavits was one from J. C. Pattillo, Clerk of the Circuit Court of Chilton County. In his affidavit Mr. Pattillo stated that he had attended the meeting at the Clanton Laundry. Mr. Pattillo's statement concerning the purpose and outcome of this meeting is virtually the same as that contained in the affidavit of venireman Reedie Taylor, which has been discussed in the original opinion. Among the people named by Mr. Pattillo as being in attendance at this meeting was Mr. Reedie Taylor.

The remaining part of Mr. Pattillo's affidavit pertains to the qualification of the venire, and it does not differ from the facts disclosed by the record, and already discussed.

The material portions of Mr. Eagerton's affidavit are as follows:

"At a time prior to the release of the report on Chilton County Board of Revenue I was in Clanton on official business and did see Mr. Reedie Taylor whom I have known for approximately thirty years and who was a student at the business col-

lege which I operated in Montgomery at one time.

"Being old friend, I stopped and talked with him about things in general and during the course of our conversation he ask me if the affairs of his County were as bad as the gossip and rumors had them. I told Mr. Taylor that I was afraid that they were. No names were called and we did not discuss the matter further and after a few minutes I left."

As to the introduction of Exhibits "A", "C", "D", and "E", we again note that the appellant admitted her handwriting on the face of all of these exhibits. (See original opinion.)

The question propounded to witness Keener and his answer thereto, as set forth in counsel's brief followed a series of questions in which it was made abundantly clear that during the examination of State's witness Keener the State had questioned him only as to the face of Exhibit "A", the same being warrant No. 554, and the question and answer could therefore rationally apply only to such portion of Exhibit "A".

Keener gave no testimony as to the authorship of the endorsement on the back of the warrant, such testimony being later elicited from State's witness Brooks.

The latter part of the request made in counsel's brief, beginning with "Also, as to the introduction of the exhibits 'A', 'C', 'D', and 'E'; the affidavits of different citizens showing that exhibits 'I', 'J', 'K', and 'L', and also the publicity shown to have been given on the trial of this case," etc., is not sufficiently clear to us to enable a full compliance on our part.

Certainly no further comment need be made as to Exhibits "A", "C", "D", and "E".

Exhibits "I", "J", "K", and "L" were claims filed against the county, and were largely in the handwriting of the appellant, except for the signatures of the claimants. These handwriting portions of the exhibits were received in evidence for comparison purposes. It appears that these claims or some of them had been the subject of comment in the auditor's report, or were for items which counsel argue would prejudice appellant in the eyes of the jury. We have already written to this point in the original opinion.

The editorial referred to upon the continuance of the case in the court below expressed deep disappointment over the delay, and discouragement over the future processing of the case.

The other publicity referred to was contained mainly in the publication of the auditor's report in the Chilton County Banner. This report is voluminous, and we will not undertake even to summarize it.

All of the above matters were considered by us on our review, and of course were before the court below. We do not see that they should in anywise affect our conclusions already announced. All are governed by the legal principles already set forth, and in fact were in general commented upon in our original opinion.

Counsel for appellant have called our attention to a statement in our original opinion which is misleading as to one of the asserted errors advanced by counsel. We have accordingly corrected our original opinion in this regard. The original opinion is therefore corrected, and the application for rehearing is denied.

Opinion corrected. Application denied.