287 So.2d 230

**Leland Walker ZIMMERMAN**

v.

**STATE.**

**6 Div. 508.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 30, 1973.

---

Robert W. Gwin, Jr., Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Special Asst. Atty. Gen., for the State.

HARRIS, Judge.

Zimmerman was convicted of robbery and sentenced to twenty (20) years in the penitentiary. On May 12, 1972, the court ascertained that he was without counsel and was unable to employ counsel and the court appointed Honorable Robert Gwin, Jr., to represent him. He was arraigned on May 23, 1972, and interposed two (2) pleas: not guilty and not guilty by reason of insanity. The case was set for June 19, 1972, and passed until January 15, 1973.

He was convicted on January 17, 1973, and is in this court with a free transcript and the lawyer who represented him at trial now represents him on appeal.

On the evening of March 28, 1972, appellant and two male companions drove a 1972 gold Mustang automobile with a Michigan license plate to Click Thomas Service Station at Morris, Jefferson County, Alabama, and parked on a gravel area away from the gas pumps. The Mustang was followed by a Volkswagen Van. This vehicle stopped at the gas pumps and was serviced by the lone attendant on duty. After the Volkswagen left the service station, the driver of the Mustang backed to the pumps and told the attendant to fill it up. After putting something over five dollars ($5.00) worth of gasoline in the car, one of the occupants asked him to check the oil and wash the windshield. While the attendant was checking the oil stick, he heard the car door on the passenger side open and when he looked up, appellant was out of the Mustang and pointing a sawed-off shotgun at him. Appellant told the attendant he wanted to see him on the inside of the station. When they got inside, appellant asked where the money was. The attendant pulled open the top drawer to a desk and removed a cigar box in which the money belonging to the station was kept. Appellant picked up the currency, put it in his pocket but left the change. He then told the attendant to lie on the floor and stay there awhile. All during the robbery, appellant kept the sawed-off shotgun pointed directly at him. As the attendant arose from his chair to get on the floor, he asked appellant if he was going to shoot him. Appellant replied, "Why? I'm not worried about it. Are you?" The attendant told him that he was worried. Appellant stated that if he didn't want to get shot he should lie down on the floor.

While lying on the floor he observed appellant get two (2) packages of cigarettes and walk out of the station. When he heard the car leaving the attendant went to the telephone and called the Police Department at Morris and reported the robbery. A police officer was dispatched to the service station and was getting a description of the three men and the Mustang automobile within three minutes after the robbery was reported. A police radio bulletin was broadcast and was picked up by an on-duty deputy sheriff, Billy James, in north Birmingham.

Billy James testified that at 6:50 P.M. he received a report over his radio stating, "that a 1972 gold Mustang, Michigan license plate, three white males, armed with a shotgun, were proceeding south from Morris, on U. S. 31", and was issued an arrest order for armed robbery. When James received the radio bulletin, he was about eighteen miles south of the place of the robbery and proceeded north to intercept the Mustang and the robbers. At the Fieldstown Road on 31 North, in Gardendale, he observed the Mustang going south. He cut across the grass median separating north and south bound traffic, put on his blue light and stopped the Mustang within three-quarters of a mile. He arrested the three men in the Mustang and radioed for assistance. After help arrived and the three men were safely in custody, James walked to the Mustang. In plain view he observed the sawed-off shotgun on the floorboard in front, two shotgun shells on the console, a box of shotgun shells with approximately twenty or twenty-two shells in the box, a hack saw on the rear floorboard and two packages of Kool cigarettes lying on the console. Following an inventory of the cigarettes at the service station, two packages of Kools were missing. The shotgun was admitted in evidence without objection.

Appellant took the witness stand and testified that he and his companions stopped at the service station in question and bought gas and two packages of Kool cigarettes but he paid for both the gas and cigarettes. In short, there was a sale and purchase but no robbery. He said he did not take the shotgun out of the Mustang. According to his testimony, he purchased the shotgun and hack saw in Kentucky and he used the hack saw to saw off the barrel enroute from Michigan and test fired it twice somewhere in Tennessee and had not had his hand on the gun since that time.

The only claim of error is the action of the trial judge in denying appellant's motion for a mistrial upon learning that a juror was disqualified within the prohibited degree of affinity as set forth in Title 30, Section 55, Code of Alabama 1940, which provides in part:

"Challenges for cause.—It is good ground for challenge by either party:

"4. That he is connected by consanguinity within the ninth degree, or by affinity within the fifth degree (computing according to the rules of the civil law), either with the defendant or with the prosecutor, or the person alleged to be injured."

The matter comes up this way: The victim of the robbery was a boy named Walter Henderson Crane, IV. After the jury was struck in the late afternoon and before any testimony was taken the jury, with the consent of all parties, was allowed to go to their respective homes to spend the night. When court convened the next morning one of the jurors, Mrs. Trotter, told the court that she recalled that her mother-in-law was a "Crane" and that she asked her husband about any possible relationship with the injured party. Her husband told her that their children's great-grandfather and the great-grandfather of the victim were brothers and that she thought she should bring this to the attention of the court. This revelation brought on the motion for a mistrial.

Juror Trotter was not within the fifth degree of kinship by affinity according to the rules of civil law. As stated in Danzey v. State, 126 Ala. 15, 28 So. 697, 698, "When existing only by affinity, the relationship does not disqualify, unless it be within the fifth degree, as computed by the civil-law rule. By that rule, as applied to collaterals, the count begins at one of the persons in question, and proceeds up to the common ancestor, and then down to the other person, calling it a degree for each person, both ascending and descending; and the number thus counted expresses the degree of kinship."

When demonstrated and applied in the instant case, it will thus be seen that juror Trotter was within the eighth degree of kinship by affinity with the victim of this robbery. With *Danzey*, supra, as the pole star to guide us by, we will illustrate:

```
              GREAT
              GREAT
          GRAND PARENT
              (4)
          /           \
   GREAT               GREAT
GRAND PARENT        GRAND PARENT
    (5)                 (3)
     |                   |
 GRAND PARENT        GRAND PARENT
    (6)                 (2)
     |                   |
  PARENT              PARENT
    (7)                 (1)
     |                   |
  VICTIM              JUROR
    (8)
```

On voir dire this juror was questioned as to whether she could give the defendant a fair and impartial trial, notwithstanding the family connection, and she answered the question affirmatively. This juror was otherwise qualified under the following cases: Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350; Willingham v. State, 262 Ala. 550, 80 So.2d 280; Bowen v. State, 274 Ala. 66, 145 So.2d 421.

The record is free of error and is due to be affirmed.

Affirmed.

All the Judges concur.