DeCARLO, Judge.
This is an appeal by an indigent from a conviction for forgery in the first degree, wherein the appellant, after waiving a jury trial, was tried before a judge and sentenced to three years imprisonment.
The indictment reads, as follows (omitting formal parts):
The Grand Jury of said County charge that . . . PAUL RAYMOND JONES, alias . . . whose name is to the Grand Jury otherwise unknown, with intent to injure or defraud, did falsely make, alter forge or counterfeit an instrument in writing, in words and figures substantially as follows:

“more specifically, the above-described check, but not the endorsement on the reverse side thereof, or, with intent to injure or defraud, did utter and publish as true, the said falsely made, altered, forged or counterfeited instrument in writing, knowing the same to be so made, altered, forged or counterfeited, against the peace and dignity of the State of Alabama. . . . ”
The facts presented by the State in support of the indictment are as follows:
*893 Ronald B. Worrell, the manager of the Montgomery division of the Alabama Motorists Association, during trial, identified a check introduced in evidence as one of those stolen from his office on or about April 24, 1978. The check was made payable to Jerome Berry and was signed under the name of Ronald B. Worrell.
Worrell testified that he did not know a Jerome Berry, did not sign the check, and gave no one permission to sign the check on his behalf. The witness further stated that he did not, himself, have the authority to sign the check.
During cross-examination Worrell testified that the check was void and that “[t]he bank would not accept it.” Further, he acknowledged that the check would be null and void on its face, because he had no authority to make such a check for the Motorists Association.
Fred Griffin was employed by the Big Bear food store in the Capitol Parkway Shopping Center at the time appellant attempted to cash the check in question. He acknowledged that, on April 24, 1978, he had an occasion to see the appellant at the food store. According to Griffin, the appellant “came to cash a check on the Alabama Motorists Association payable to Jerome Berry.”
He identified State’s Exhibit No. 1 as the check presented to him and stated, “This is the check he presented to me when he signed it, middleways down the check, in my presence. It was already signed when he brought it in but I had him to sign it right here — .”
Griffin testified that the appellant presented the check as payment for “some merchandise in the store.” The witness stated that, at that time, he asked the appellant for some identification and that the appellant presented an Alabama driver’s license and a metal social security card, both issued in the name of Jerome Berry. Griffin identified these items in court and they were admitted into evidence without objection.
The witness added that he had been notified of the stolen checks and stated that, when the cashier recognized the check as one of those belonging to the Alabama Motorists Association, she sent the appellant to him so that he [Griffin] could cash it. According to Griffin, he compared the identification which the appellant had presented to him with the name on the check and then sent him back to the check-out line to get the check cashed. Griffin testified that he told the appellant that the cashier would cash the check when he made his purchase, as a “stall tactic,” because she did not have the money to cash it.
The witness stated that, at that point, he called the police department and, within “about two minutes,” an officer walked into the store and asked the appellant his name. According to Griffin, the appellant replied, “Jerome Berry,” and the policeman then told the appellant he was under arrest.
On cross-examination, Griffin testified that he did not see the appellant “sign anything on the front of the check,” but “did see him sign something on the back of the check.”
H. M. Carmichael, a Montgomery police officer, investigated the forgery of the check drawn on the Alabama Motorists Association account. He testified that, on April 24,1978, he talked with the appellant after the appellant had executed a “Rights Form,” indicating that he had been informed of his constitutional rights regarding the interview.
Officer Carmichael testified that neither he, nor anyone in his presence, threatened or coerced the appellant in any way, nor offered him any reward or hope of reward, to obtain the signed waiver form or subsequent statement.
During the trial the appellant’s statement was objected to and, after a voir dire examination, the statement was introduced over appellant’s objection.
The statement taken from the appellant reads, as follows:
“Montgomery Police Dept.
DET. DIV.
April 24/78
*894 “Statement of Paul Raymond Jones concerning the forgery of a stolen check at the Big Bear Store on Mt. Miegs Rd. 4/24/78
Statement taken by H. M. Carmichael “Me and Tom got together and he told me that he had some papers and some good I.D. and he asked me if I wanted to make some bread with him and he said that he needed a quiet partner and some one to drive him around and then we went around to some stores and cashed some checks. We were in Thomas Fitzpatrick’s car when we were busting these checks. Thomas took all the checks in the stores accept the one that I took in the Big Bear today.
“Q. How many checks did you have that you could cash?
“A. One, the one that I got caught with.
“Q. Did you write the name on the check?
“A. Yes, I wrote the name on the check while I was in the store.
“Q. Was this at the Big Bear on Mt. Miegs Rd?
“A. Yes sir it was.
“Q. Who was with you when you tried to cash the check today?
“A. I was in there by myself.
“Q. How many other checks have you tried to cash?
“A. None, Thomas Fitzpatrick is the one who tried to cash checks at Big Bear and Winn Dixie in Wetumpka yesterday that’s where he busted some that I know of he did try some other places but he was turned down.
“Q. Who was with you today when you tried to cash the check at the Big Bear?
“A. J. J. and Tom and Ann, that’s Tom Fitzpatrick and I don’t know the girl’s last name, but Tom has got a bunch of checks. I saw them they were folded I couldn’t tell how many he had.
“Q. Have you made this statement on your own free will?
“A. Yes.
“Q. Is this statement true and correct to the best of your knowledge?
“A. Yes sir.
“Q. Is there anything that you would like to add or change about this statement?
“A. No.
"/s/ Paul Raymond Jones /s/ H.M. Carmichael "Paul Raymbnd Jones Det. H.M. Carmichael.11
During cross-examination, Officer Carmichael was asked if he had asked the appellant:
“Q. . . Did you write the name on the check?’ (reading). ‘You asked him that question?
“A. Yes, sir.
“Q. And he answered, ‘Yes, I wrote the name on the check while I was in the store.’ What name is he talking about?
“A. The name that’s on the check, it escapes me right now.
“Q. The endorsement?
“A. Yes, sir.”
At the conclusion of Officer Carmichael’s testimony the State rested and the appellant moved to exclude the State’s evidence on the following grounds: (1) That thp State’s instrument was void on its face and (2) that the evidence proved only that the appellant had forged an endorsement. Defense counsel argued that the indictment “completely negates the forging of the endorsement.”
The motion was denied and the appellant rested his case without presenting any evidence.
I
The appellant insists that proof to sustain his conviction was insufficient because the instrument was void on its face and thus could not serve as a basis for a prosecution of forgery.
Appellant bases this contention on the fact that the manager of the Alabama Motorists Association, Ronald B. Worrell, whose name appears as the drawer of the check, was not authorized to sign checks for the Association.
In support of this contention, appellant cites Williams v. State, Ala.Cr.App., 333 So.2d 610. However, the check in the in *895 stant case cannot be placed in the same category as the instrument in Williams. There, the instrument involved was a check executed and cashed on a Sunday, which under the Code of Alabama 1940, Recomp. 1958, was void on its face and not subject to forgery. See also, Gooch v. State, 249 Ala. 477, 31 So.2d 776.
In a forgery prosecution, the only requirement involving the forged instrument is that it possess “some apparent legal efficacy” and that “there is a reasonable possibility that it may operate to cause injury.” Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350.
In Wyatt, supra, the forged instrument was a county warrant which was purported to have been drawn by the president of the county commission rather than by the chairman of the court of county commissioners, which was the appropriate appellation. It was the payee’s signature that was forged on the county warrant.
This court in Wyatt, supra, stated:
“While hypertechnically, the proper appellation of a county governing body is ‘Court of County Commissioners’ . . .

“[I]t is our conclusion that the warrant as drawn in this case, unless a mechanical and hypertechnical mode of reasoning be resorted to, was drawn with sufficient substantial compliance to statutory regulation, possessed apparent legal efficacy, and carried with it a possibility of operating to cause injury.”
Similarly, in Clay v. State, 57 Ala.App. 630, 330 So.2d 453, this court held that a savings account withdrawal form, which was signed in the name of a person who did not have a savings account and which did not bear an account number, was not void when appellant presented it for payment. This court concluded that the instrument was a proper subject of forgery as alleged in the indictment and that it possessed apparent legal efficacy.
In the present case, the check in question possessed a sufficient appearance of legal efficacy to make it a proper subject of forgery. See Wyatt v. State, supra and Clay v. State, supra. Had it not been for prior notification that checks from the Alabama Motorists Association had been stolen, Mr. Griffin would not have detained the appellant and his fraud would not have been discovered.
In a forgery prosecution, it is not required that injury result from utterance of a fraudulent forged instrument, or that the defendant's fraudulent intent be carried out successfully. Hall v. State, 31 Ala.App. 455, 18 So.2d 572. Under the rationale in Hall, even though no injury resulted from the utterance of the forged check, the offense is still complete.
The appellant also contends that his motion to exclude should have been granted because the State failed to show who was authorized to issue checks on the Alabama Motorists Association account and that the instrument in question was not in fact signed by the party authorized to sign checks. Therefore, he insists that this was a failure to show the check was in fact false. This contention is based upon the following testimony of Ronald B. Worrell, which reads as follows:
“Q. Did you sign this check?
“A. Absolutely not.
“Q. Did you give anybody permission to sign this check?
“A. No, sir. It wouldn’t have been valid if I had.
“Q. Do you know the defendant there?
“A. Never seen him before except in a prior trial, the Grand Jury hearing.
“Q. Do you have the authority to sign even on that account?
“A. No, sir.
“Q. And you gave no one permission to sign that check?
“A. No, sir, I couldn’t have. I didn’t have the authority to give it nor the authority to sign it.”
In support of this contention, the appellant relies on Finney v. State, Ala.Cr.App., 348 So.2d 876, in which this court stated:
*896 “The appellant’s motion for a directed verdict was due to be given.
“ ‘Forgery is not established by the bare fact that one man has signed the name of another to a writing having apparent legal significance because the signing (1) may have been authorized, in which case the writing is not false, or (2) though unauthorized may have been in the bona fide belief in the existence of such authority, in which case, although the writing is actually false, it was prepared without an intent to defraud.’ Perkins at 352.
See also: 2 Wharton, Criminal Law (1957) Sections 624-626, pp. 400-403. Because the state, in a prosecution for the forgery of a check, failed to prove that the check was false by not offering any evidence that the accused was not authorized to make the check, this case is due to be reversed. The absent proof may be supplied by the testimony of [the drawer] that he did not authorize the appellant to write or sign the check.”
In Finney, supra, the appellant wrote a check on the account of Mr. and Mrs. Wesley N. Nixon, signing the name of Wesley N. Nixon and uttering it at a clothing store for merchandise. The State proved that the appellant actually wrote Nixon’s name and that the signature was not Nixon’s, but Nixon did not testify. No proof was offered by the State that the appellant was not authorized to sign Nixon’s name.
The case at bar can be distinguished from Finney, supra, in that Mr. Worrell testified that the check in question was stolen. From the record:
“Q. I will show you what has been marked as State’s Exhibit No. 1 and ask you if you can identify that, please?
“A. Yes. It’s one of the checks that was stolen on Friday night — Friday or Saturday — in the latter week in April, April 24th I believe it was.
“Q. How did you determine those were stolen?
“A. They were missing after a break-in, every one of them. All the checks we had in the office were missing after a break-in.
“Q. Did you have the number of the stolen checks?
“A. We had the stubs left. They tore the checks out of the book so we knew the ones that were stolen from the ones we had written and completed the stubs, then all the rest of them were torn out of the book and missing.
“Q. Do you know Jerome Berry?
“A. Never heard of him.
“Q. Is that your name that appears down here—
“A. It’s my name.
“Q. —as the signature?
“A. —but not my signature.”
It is well established that proof of corpus delicti may be supplied by circumstantial evidence. See Ala. Digest, Criminal Law § 563. Here the foregoing testimony gives rise to the inference that the check was, indeed, false.
Furthermore, the State’s evidence tended to show that the appellant knew that the check was false and that he had intended to defraud Fred Griffin when he presented the check to him at the Big Bear food store. The appellant obtained the check and the documents of identification for Jerome Berry from a Tom or Thomas Fitzpatrick. The appellant later presented the check and the identification, showing that he was Jerome Berry, to Griffin, and gave the police officer the false name of Jerome Berry when he was asked his name by the arresting officer.
Intent to defraud or injure need not be proved by positive and direct evidence. Huddleston v. State, 37 Ala.App. 57, 64 So.2d 90. Rather, the intent to defraud may be inferred from the accused’s conduct, in light of the surrounding circumstances. McGee v. State, 20 Ala.App. 221, 101 So. 321; Bartlett v. State, 8 Ala.App. 248, 62 So. 320.
It is our opinion that the evidence presented by the State was sufficient to present a question of appellant’s guilt for the jury and that the trial court was correct in overruling the motion to exclude.
*897 We have searched the record for error and have found none prejudicial to this appellant. Therefore, the judgment of conviction by the Montgomery Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.